548 So.2d 526 (1988)
Phillip D. HALLFORD
v.
STATE.
4 Div. 913.
Court of Criminal Appeals of Alabama.
June 14, 1988.
As Modified on Denial of Rehearing August 23, 1988.
*528 Bill Kominos, Ozark, for appellant.
Don Siegelman, Atty. Gen., and J. Randall McNeill and William D. Little, Asst. Attys. Gen., for appellee.
PATTERSON, Judge.
Appellant, Phillip D. Hallford, was indicted on July 10, 1986, in Dale County, for the capital offense of murder committed during a robbery in the first degree, in violation of § 2(a)(2), Act No. 81-178, Ala. Acts 1981, enacted March 31, 1981.[1] Omitting its formal parts, the indictment reads as follows:
"The Grand Jury of said County charges that before the finding of this indictment that Phillip D. Hallford did intentionally cause the death of Charles E. Shannon by shooting him with a pistol and Phillip D. Hallford caused said death during the time that Phillip D. Hallford was in the course of committing a theft of billfold, the property of Charles E. Shannon, by the use of force against the person of Charles E. Shannon with intent to overcome his physical resistance or physical *529 power of resistance, while the said Phillip D. Hallford was armed with a deadly weapon, to-wit: a pistol, in violation of Section 2(a)(2) of Act No. 81-178...."
At arraignment, Hallford pleaded not guilty. On March 4, 1987, a jury found him guilty of the capital offense charged in the indictment. A sentencing hearing was held before the jury, in accordance with §§ 13A-5-43 through -46, Code of Alabama 1975, and the jury returned an advisory verdict recommending that the penalty be death. Ten jurors recommended the death penalty and two recommended a sentence of life imprisonment without the possibility of parole.[2] Thereafter, the trial court held another sentencing hearing, in accordance with §§ 13A-5-47 through -52, and, after weighing the aggravating and mitigating circumstances and considering the jury's recommendation, sentenced Hallford to death.[3]
The state's evidence, which primarily consists of the testimony of appellant's children, tended to show that, during the night of April 12 or the early morning hours of April 13, 1986, appellant used his 15-year-old daughter, Melinda Hallford, to lure the 16-year-old victim, Charles Eddie Shannon, to an isolated area near an abandoned bridge over the Choctawahatchee River in Dale County. The victim was Melinda's "boyfriend." Appellant instructed Melinda to telephone the victim and arrange a meeting with him near the bridge. She made the call around midnight, April 12, and arranged to meet the victim as she had been instructed. Then, appellant, Melinda, and appellant's 15-year-old stepson, Sammy Joe Robbins, went to the bridge in appellant's vehicle and parked. Appellant and his stepson got out of the vehicle and hid nearby. Melinda remained in the vehicle. Around 1:00 a.m., April 13, the victim came to the vehicle and began talking with Melinda. Appellant approached the victim, turned him around and, after a brief struggle, shot him through the roof of his mouth with a .22 caliber pistol. Just after the shot was fired, the victim stated, as he slumped to the ground, "What did you shoot me for?" and appellant said, "For fucking around with somebody else's pussy." Appellant grabbed the victim by the feet and dragged him toward the bridge. As he was being dragged, the victim was crying and saying, "Oh my God, you shot me," and "Oh, Jesus Christ, you shot me." At some point, the victim regained his balance, and appellant marched the victim toward the river while holding him by the hair of his head. After several minutes, two more shots were heard, and shortly thereafter appellant returned to the vehicle. Melinda, Sammy Joe, and appellant went back to their home nearby, and appellant and Sammy Joe returned before daylight to the scene with a jug of water and a brush and washed away blood spots on the bridge. After daylight, appellant and Sammy Joe again returned to the scene to see if the body of the victim had floated to the surface of the river. If it had, they intended to shoot it with the shotgun they had brought in order to sink it.
The next day, appellant built a fire in a drum in his backyard and burned the victim's wallet and its contents, which included a photograph and a military identification card. While burning the wallet, he stated to Melinda that the victim "was a cheapskate because he didn't have any money in his wallet." He also showed her a picture of a girl he had taken from the wallet and told her that the victim had not been faithful to her. The victim's father testified that the victim had money in his wallet and that he had given his son $10 on the afternoon before his son disappeared. Appellant attempted to destroy the .22 caliber pistol by melting it down in an old tire rim with an acetylene torch. While melting the pistol, he had his 13-year-old son, Jack Hallford, act as a lookout for him and told *530 him, "They won't know what this was," and "They won't find no evidence." The remains of the pistol were recovered and identified at trial by a firearms expert as a .22 caliber pistol. Appellant bored holes in the empty shell casings from the pistol, and made them into a necklace. He made Melinda wear the necklace so that she would "remember." Appellant told his 18-year-old stepson, Cecil Wayne Robbins, shortly after the killing, that "I wouldn't have to worry about him [referring to the victim] no more," and that "he had got rid of him."
The victim's badly decomposed body was discovered in the river by two fishermen on April 26, 1986. An autopsy disclosed three wounds which were made by .22 caliber bullets. The bullets were recovered from the victim's head. One bullet entered the roof of the mouth, one in front of the left ear, and one in the forehead. Any of the fired bullets could have caused death. The official cause of death was "[m]ultiple gunshot wounds to the head."
There was testimony that appellant had threatened the victim about a week before the killing by telling him that if he rode his motorcycle by appellant's house again, he would kill him. When the police investigation began to focus on appellant, after the discovery of the victim's body, appellant fled with Melinda. He was arrested in Escambia County, Florida, on May 23, 1986, and extradited to Alabama.
Appellant testified in his own behalf, denying any knowledge of the crime or even knowing the victim. He attempted to establish an alibi for his whereabouts on the night of the killing; attempted to cast suspicion on his stepson, Cecil Wayne Robbins, by claiming that he had seen him burning a bloody shirt on the day after the killing; and tried to cast doubt on the testimony of his children by claiming that they had "drug" problems and were testifying against him because they were being pressured and detained. Cecil Wayne Robbins testified that he had a bloody shirt that was bloody because appellant had stabbed him in the back.
Appellant raises ten issues on appeal.

I
Appellant first contends that the trial court erred in admitting, over his objection, a photograph of the victim, Charles E. Shannon, that had been taken approximately one month prior to the victim's death.
Angelita Johns, the stepmother of the victim, identified a photograph of the victim taken approximately one month prior to his death and testified that it was the way he looked when he disappeared. The state's offer of the photograph into evidence was objected to by appellant on the grounds that the photograph was not relevant to any issues before the court and that the purpose of its introduction was to inflame the jury. In an effort to prevent the introduction of the photograph, appellant offered to stipulate that the victim was Mrs. Johns's stepson, that he was deceased, and that he was 16 years of age. The trial court overruled appellant's objection and admitted the photograph into evidence.
"The basic question to be asked in deciding the admissibility of a photograph of a victim, just as with any other demonstrative evidence, is whether it has a reasonable tendency to prove or disprove some material fact in issue. This decision is left largely to the sound discretion of the trial judge. Of course, the decision of the trial judge is not necessarily final since his decision is reviewable to determine if there has been an abuse of discretion."
C. Gamble, McElroy's Alabama Evidence § 207.01(2) (3d ed. 1977) (footnotes omitted). It is settled law that a photograph of a deceased person taken before his death may be introduced in evidence for identification purposes, and the photograph is admissible for identification purposes even if there is no contested issue of identity of the deceased. Boulden v. State, 278 Ala. 437, 179 So.2d 20 (1965); Sanders v. State, 202 Ala. 37, 79 So. 375 (1918); Malachi v. State, 89 Ala. 134, 8 So. 104 (1889); Jolly v. State, 395 So.2d 1135 (Ala.Cr.App.1981); Luschen v. State, 51 Ala.App. 255, 284 *531 So.2d 282 (1973); Boyd v. State, 50 Ala.App. 394, 279 So.2d 565 (1973); C. Gamble, supra, § 207.01(2).
In the case sub judice, we find no abuse of the trial court's discretion in admitting the photograph into evidence. It was admissible for the purpose of identifying the body as being that of the victim alleged in the indictment, Charles E. Shannon. We hold that the introduction of the victim's photograph was not error, even though there was no contested issue of identity of the victim.

II
Appellant next contends that the trial court erred in refusing to grant his motion for a mistrial when the state's witness and the prosecutor used the word "murder" in describing the events surrounding the death of the victim. He argues that the use of the word "murder" invaded the province of the jury and so prejudiced him that its effect could not have been eradicated from the jurors' minds.
During the direct examination of appellant's stepson, Sammy Joe Robbins, who was an eyewitness to the commission of the crime, the following exchange occurred:
"MR. EMERY [prosecuting attorney]: Do you remember the night of April the 12th of 1986?
"A. Yes, sir.
"Q. What do you remember about that night that brings it to your attention?
"A. A murder.
"Q. The murder of who?
"A. Eddie
"MR. KOMINOS [defense counsel]: Your, Honor, I'm going to object and ask for a mistrial. That is the ultimate question and we feel that we're due for a mistrial in this matter and I would like to be heard.
"THE COURT: Take the jury back. (Jury excused).
"MR. KOMINOS: The ultimate question to be decided by this jury is whether or not my client is guilty of the matters charged in the indictment. They have the sole responsibility to make that determination. We feel that the jury has been so prejudiced by the District Attorney mentioning the word "murder," and from the witness, that that cannot be erased from the jury's minds. Therefore, we respectfully ask for a mistrial at this time.
"THE COURT: Motion for a mistrial denied.
"MR. KOMINOS: Then we would ask that this court give instructions to the jury instructing them that they're not to consider the words spoken by the District Attorney or the words spoken by the witness and that they're not to consider that word at all in their deliberations.
"THE COURT: Bring the jury back in. (Jury returned.)
"THE COURT: Ladies and Gentlemen of the jury, this is what we classify as a homicide case. In a homicide case it means that one person is dead or has been killed and that it was done at the hands of another person. Whether or not it would be an accidental homicide or an intentional homicide or murder or a killing or what type of homicide it is, that's for you to decide. Sometimes when somebody is dead someone will say that he's murdered or killed or that type of thing. You are ultimately to have the final decision as to whether or not there was a homicide and whether or not it was an unlawful homicide, what type of unlawful homicide it is and who committed the crime, if anybody committed the crime. But that's a decision for you to make. So, if the witness classifies something as a murder, you should just disregard it and look at the facts and not the conclusions of the witnesses that they have drawn."
The granting of a motion for a mistrial is within the sound discretion of the trial court, and its determination will not be reversed unless a clear abuse of discretion is shown. Saffold v. State, 494 So.2d 164 (Ala.Cr.App.), cert. denied, 494 So.2d 164 (Ala.1986). The granting of a mistrial is an extreme measure and should be exercised only when it is manifestly necessary to do so or when the ends of justice would otherwise *532 be defeated. Free v. State, 495 So.2d 1147 (Ala.Cr.App.1986). A mistrial should be granted only as a last resort, as in cases of otherwise ineradicable prejudice. Where error is eradicable, a mistrial is too drastic and is properly denied. Brown v. State, 481 So.2d 1173 (Ala.Cr.App.1985); Chillous v. State, 405 So.2d 58 (Ala.Cr.App.1981).
In the instant case, the trial court, in denying the motion for mistrial, gave prompt and detailed curative instructions. In our opinion, the matter objected to was not so prejudicial that it would not have been erased from the minds of the jury. The instructions were sufficient to eradicate any possible prejudice which may have arisen. We do not believe that the prosecutor invited the witness to use the word "murder," as suggested by appellant in his brief. Nor do we believe that the prosecutor used the word with intent to prejudice the rights of appellant. To the young witness who first used it, it was to him an understandable shorthand rendition of what he observed. See, e.g., Broughton v. Kilpatrick, 362 So.2d 865 (Ala.1978); Brown v. State; Pride v. State, 473 So.2d 576 (Ala.Cr.App.1984), cert. denied, 473 So.2d 576 (Ala.1985). We find no abuse of discretion here. The denial of the motion was proper.

III
Appellant contends that the trial court erred in admitting into evidence, at the suppression hearing, copies of two search warrants and affidavits from the State of Florida on the ground that they did not meet the requirements of the best evidence rule. These search warrants were obtained in Florida by Florida authorities for the purpose of searching appellant's motel room and automobile shortly after his apprehension in that state. The search warrants were introduced by the state at the suppression hearing for the purpose of assisting the trial court in determining the legality of the searches. An Escambia County, Florida, sheriff's deputy testified that the warrants and affidavits introduced were exact copies of the originals and that the originals had been returned to the issuing court. The trial court stated that it was necessary to admit the documents in order for it to make a determination of the admissibility of any evidence seized and that, if any questions arose as to authenticity, it would allow the state to file certified copies. The state did file certified copies, but not until after the trial and during the hearing on the motion for a new trial; however, no contention is made that there was any discrepancy between the certified copies and the ones originally introduced at the suppression hearing. Our examination discloses that they are identical.
Appellant argues that, since the copies of the search warrants and affidavits introduced at the suppression hearing were inadmissible, all evidence seized during the resulting searches should have been suppressed. The only item that was seized during the searches and introduced into evidence was a "sawed-off" shotgun found in the motel room where appellant had been arrested.
We find that the copies of the search warrants and affidavits, which were introduced at the suppression hearing and identified as exact copies of the originals by an officer qualified to make such an identification, were properly admitted. Under the circumstances of this case, the documents, being copies of government records, were admissible as an exception to the best evidence rule. C. Gamble, supra, § 218.01. See also Roynica v. State, 54 Ala.App. 436, 309 So.2d 475 (Ala.Cr.App.1974), cert. denied, 293 Ala. 772, 309 So.2d 485 (Ala.), cert. denied, 423 U.S. 858, 96 S.Ct. 111, 46 L.Ed.2d 85 (1975).
We note that appellant could not have been prejudiced by the use of the uncertified copies of the search warrants and affidavits by the trial court in making its decision on the motion to suppress. Appellant was able to raise a Fourth Amendment challenge to the sufficiency of the warrants, and the copies introduced and used by the trial court were identical to the originals.

IV & V
Appellant contends, in Sections IV and V of his brief, that the trial court *533 committed reversible error by admitting into evidence, over his objection, State's Exhibit 20, which was the shotgun seized in the motel room occupied by appellant at the time of his apprehension in Pensacola, Florida. Appellant argues that the search and seizure were unlawful and bases this argument on a claim that the search warrant authorizing the search of the motel room was issued without probable cause and was based entirely upon hearsay. We do not agree with appellant's contentions.
By the time of appellant's arrest, the investigation had progressed to the point that warrants for his arrest had been issued by Alabama authorities, and a federal warrant for unlawful flight to avoid prosecution had been issued. An all points bulletin for appellant, along with a description of his automobile, had been broadcast. About 2:00 a.m., on May 23, 1986, officers of the Pensacola Police Department observed appellant's automobile parked at a Pensacola motel. The officers knocked on the door of the motel room occupied by appellant, and after some delay, Melinda Hallford came to the door. Through the open door, the officers observed appellant hiding under the bed. When asked to identify himself, he gave the officers a false name, but he was later correctly identified by Melinda. He was arrested pursuant to the federal warrant. We find the arrest proper. The officers secured the room and the automobile. Later the same day, the search warrants were obtained, and the motel room and automobile were searched.
Appellant contends that the affidavits supporting the issuance of the search warrants consisted solely of hearsay information given to the Escambia County, Florida, deputies by Walter Ford of the Dale County, Alabama, sheriff's office, and that this hearsay would not support a finding of probable cause to issue the warrants. We do not agree. Bruce Wood of the Florida sheriff's office and Walter Ford, the chief investigator in the case from Alabama, who had first-hand knowledge of the facts, went before the issuing magistrate to obtain the warrants, and both signed the affidavits, attesting to the facts set forth therein. Obviously, the issuance of the warrants was not based upon hearsay information. After examining the affidavits, we find that they reflect sufficient probable cause for the issuance of the warrants. Since the search warrants are legally proper in every respect, the seizure of the shotgun was authorized. Appellant's stepson, Sammy Joe Robbins, identified the shotgun as the one appellant had carried back to the scene of the crime on the day after the killing for the purpose of shooting the body if it had been found floating on the surface. The shotgun was properly admitted into evidence.
Futhermore, even if the issuance of the warrant was based entirely upon hearsay information provided by Ford to the Florida authorities, as appellant argues, the information would still provide sufficient facts upon which the issuing magistrate could find probable cause to issue the warrants. Observations of fellow officers participating in the same investigation are entitled to a presumption of reliability and would provide probable cause upon which to base the issuance of a search warrant applied for by one of the investigating officers. 2 W. LaFave, Search and Seizure § 3.5(a) (2d ed. 1987); United States v. Ventresca, 380 U.S. 102, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965); United States v. Reed, 700 F.2d 638 (11th Cir.1983); Richardson v. State, 376 So.2d 205 (Ala.Cr.App.1978) aff'd, 376 So.2d 228 (Ala.1979).
The motel room occupied by appellant was registered in the name of James Boyington. The record shows that Boyington had rented the motel room and was allowing appellant to use it. While we do not base our holding of legality of the search on consent, we note that Boyington consented to the search of the motel room.

VI & VII
Appellant contends, in sections VI and VII of his brief, that the state failed to prove all of the elements of robbery in the first degree and that, because of such failure, it was reversible error for the trial court to submit the case to the jury on the capital offense charged. He raised this *534 issue at trial by a motion to exclude the state's evidence upon conclusion of the presentation of the state's case (which we construe as a motion for judgment of acquittal, see A.R.Crim.P.Temp. 12). In support of his contention, he argues that there was no evidence that the wallet was actually taken from the victim, that there was no evidence that the wallet was taken from the victim while he was alive, and that there was no evidence that appellant intended to rob the victim. He suggests that the wallet could have accidently fallen from the victim's pocket and have been picked up by appellant after the murder, or that the taking of the wallet by appellant occurred after the murder as a mere afterthought. Appellant contends that the evidence is insufficient to support his conviction for the capital offense of murder during the commission of a robbery under § 13A-5-40(a)(2), Code of Alabama 1975, because, he says, the evidence was insufficient to prove the commission of a robbery at the time the victim was killed.
To sustain a conviction under § 13A-5-40(a)(2) for capital robbery-murder, the state must prove beyond a reasonable doubt: (1) a "robbery in the first degree or an attempt thereof," as defined by § 13A-8-41; (2) a "murder," as defined by § 13A-6-2(a)(1); and (3) that the murder was committed "during" the robbery or attempted robbery, i.e., that the murder was committed "in the course of or in connection with the commission of, or in immediate flight from the commission of" the robbery or attempted robbery in the first degree, § 13A-5-39(2). Connolly v. State, 500 So.2d 57 (Ala.Cr.App.1985), aff'd, 500 So.2d 68 (Ala.1986). The capital crime of robbery when the victim is intentionally killed is a single offense beginning with the act of robbing or attempting to rob and culminating in the act of intentionally killing the victim; the offense consists of two elements, robbing and intentional killing. Davis v. State, 536 So.2d 110 (Ala.Cr.App.1987); Magwood v. State, 494 So.2d 124 (Ala.Cr.App.1985), aff'd, Ex parte Magwood, 494 So.2d 154 (Ala.), cert. denied, 479 U.S. 995, 107 S.Ct. 599, 93 L.Ed.2d 599 (1986). The intentional murder must occur during the course of the robbery in question; however, the taking of the property of the victim need not occur prior to the killing. Clark v. State, 451 So.2d 368 (Ala.Cr.App.), cert. denied, 451 So.2d 368 (Ala.1984). While the violence or intimidation must precede or be concomitant with the taking, it is immaterial that the victim is dead when the theft occurs. Thomas v. State, 460 So.2d 207 (Ala.Cr.App.1983), aff'd, 460 So.2d 216 (Ala.1984).
"As the Alabama Supreme Court held in Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962), `the fact that the victim was dead at the time the property was taken would not militate [against a finding] of robbery if the intervening time between the murder and the taking formed a continuous chain of events.' Clements v. State, 370 So.2d 708, 713 (Ala.Cr.App.1978), affirmed in pertinent part, 370 So.2d 723 (Ala.1979); Clark v. State, 451 So.2d 368, 372 (Ala.Cr.App.1984). To sustain any other position `would be tantamount to granting to would-be robbers a license to kill their victims prior to robbing them in the hope of avoiding prosecution under the capital felony statute.' Thomas v. State, 460 So.2d 207, 212 (Ala.Cr.App.1983), affirmed, 460 So.2d 216 (Ala.1984).
"Although a robbery committed as a `mere afterthought' and unrelated to the murder will not sustain a conviction under § 13A-5-40(a)(2) for the capital offense of murder-robbery, see Bufford v. State, supra, O'Pry v. State, supra [642 S.W.2d 748 (Tex.Cr.App.1981) ], the question of a defendant's intent at the time of the commission of the crime is usually an issue for the jury to resolve. Crowe v. State, 435 So.2d 1371, 1379 (Ala.Cr.App.1983). The jury may infer from the facts and circumstances that the robbery began when the accused attacked the victim and the capital offense was consummated when the defendant took the victim's property and fled. Cobern v. State, 273 Ala. 547, 550, 142 So.2d 869, 871 (1962). The defendant's intent to rob the victim can be inferred where `[t]he intervening time, if any, between the killing *535 and robbery was part of a continuous chain of events.' Thomas v. State, 460 So.2d 207, 212 (Ala.Cr.App.1983), affirmed, 460 So.2d 216 (Ala.1984). See also Cobern v. State, 273 Ala. 547, 142 So.2d 869 (1962); Crowe v. State, 435 So.2d 1371 (Ala.Cr.App.1983); Bufford v. State, 382 So.2d 1162 (Ala.Cr.App.), cert. denied, 382 So.2d 1175 (Ala.1980); Clements v. State, 370 So.2d 708 (Ala.Cr.App.1978), affirmed in pertinent part, 370 So.2d 723 (Ala.1979)."
Connolly, 500 So.2d at 63.
These principles were fully and correctly explained to the jury, for the trial court charged the jury, in part, as follows:
"To be a capital offense, the murder of the intentional killing type must have been committed during the robbery in the first degree. `During' means in the course of or in connection with or immediate flight therefrom with the commission of robbery in the first degree. An accused is not guilty of a capital robbery murder where the intent to rob was formed only after the victim was killed. To sustain a conviction under the Alabama Statute for Capital Murder-Robbery, the State must prove, beyond a reasonable doubt, a robbery of the first degree or an attempt thereof as I have just defined it, and intentional murder or killing as I have just defined it, and that the murder was committed during the robbery or attempted robbery and that the murder was committed in the course of or in connection with the commission of or the immediate flight from the commission of the robbery or the attempted robbery in the first degree.
"The fact the victim is dead at the time the property is taken will not [militate against] the crime of robbery if the intervening time between the murder and the taking formed a continuous chain of events. So, the law is that the fact that the victim is dead at the time the property is taken would not prevent a jury from finding that a capital murder robbery had [been] committed if the intervening time between the murder and the taking formed a continuous chain of events.
"Although a robbery committed as a mere afterthought, and unrelated to the murder will not sustain a conviction for the capital offense of murder robbery, the question of the Defendant's intent at the time of the commission of the crime is an issue for the jury to decide. So, it's an issue for you to decide what the Defendant's intent was at the time of the commission of the crime, if you found that the Defendant is guilty of the crime.
"If you are reasonably satisfied from the evidence, beyond a reasonable doubt, that at or during the time that the attemptthat at or during the time that the offense was being committed; that is, at or during the time that the intentional type killing as I have defined it was being committed, that the Defendant had formed the intent to kill Charles Edward Shannon and dispose of his body and to take the wallet so that the body could not be easily identified, if you found that all of that happened at one time, and you believe it beyond a reasonable doubt, then you could find the Defendant guilty of a capital offense.
".... The burden is upon the juryif you found that the Defendant committed the killing, the burden would be upon the juryit would be a question of fact for the jury to decide as to whether or not at the time the killing took place, whether or not the Defendant intended at that time to dispose of the body and to take the wallet or steal the wallet so that the body could not be identified. If you found all of that, then you could find theand you found it beyond a reasonable doubt from the evidence in the case, then you could find the Defendant guilty of the capital offense of capital murder-robbery.
"On the other hand, if you're not convinced by the evidence, beyond a reasonable doubt, that the Defendant committed a crime of murder of the intentional killing type of Charles Edward Shannon, by the means alleged in the indictment, or if you're not convinced by the evidence beyond a reasonable doubt that said murder of the intentional killing type was committed during a robbery in the first *536 degree, as I have defined it, and was committed by the Defendant, then the Defendant could not be guilty of the capital offense."
The question is whether there was sufficient evidence presented by the state to establish a prima facie case of capital murder, more particularly, the robbery component.
After a careful review of the state's evidence presented prior to appellant's motion, we find that the jury could have reasonably inferred from the circumstances that appellant planned to kill the victim and cover up his crime by disposing of the body in such a way that it was unlikely to be found, and if found, difficult to identify. The jury could have further reasonably inferred from the evidence, that in carrying out this plan, appellant stole the victim's wallet and shoved the victim into the river; that the taking of the wallet was a part of the overall plan or scheme; and that appellant's intent to do so was formed prior to the actual killing. The evidence offered the additional reasonable inference that, from appellant's use of the term "cheapskate" when commenting on his alleged failure to find any money in the victim's wallet, he was partially motivated by the desire for pecuniary gain. The site selected by appellant for the commission of the crime, the use of his daughter to lure the victim to the site, his efforts to dispose of incriminating evidence, his checking to see if the body had floated to the surface, and the burning of the wallet with the victim's identification are facts from which the jury could have reasonably concluded that the murder and robbery were planned in advance and that appellant intended to steal the victim's wallet and identification at the time the killing took place. Thus, the state's evidence supported the conclusion that the robbery began when the attack took place and was consummated when appellant took the wallet.
Appellant argues that there was no evidence that the wallet was actually taken from the victim. Appellant's own children, who were eyewitnesses to the killing, testified in detail how appellant shot the victim and dragged him to the river. They also observed appellant burning the victim's wallet and its contents the next day and heard him commenting about the contents of the wallet. Although circumstantial, the evidence raises a strong inference that appellant took the wallet from the victim at the time he killed him and shoved him into the river. Appellant also argues that there was no evidence that the wallet was taken from the victim while he was alive. While it is true that there was no direct evidence, it does not matter here. Even if the victim were dead at the time of the taking of the wallet, that would not militate against a finding of the crime of robbery, since the intervening time between the murder and the taking of the wallet formed a continuous chain of events. See Connolly. In responding to appellant's argument that there was no evidence that appellant intended to rob the victim, we find that sufficient evidence was presented to require that the question of appellant's intent be submitted to the jury.
After a careful review of the state's evidence in the light of the principles set out for such review in Dolvin v. State, 391 So.2d 133 (Ala.1980); Cumbo v. State, 368 So.2d 871 (Ala.Cr.App.1978), cert. denied, 368 So.2d 877 (Ala.1979); and Magwood v. State, supra, we find it sufficient to establish a prima facie case of robbery when the victim is intentionally killed. Appellant's motion to exclude the evidence was properly denied. In addition, the evidence amply supports the verdict of the jury finding appellant guilty.

VIII
Appellant contends that the trial court committed reversible error by admitting, over his objection, evidence of unrelated crimes for which he was not charged in the indictment. During the jury sentencing phase of the trial, the state recalled Melinda Hallford as a witness, and the following occurred:
"Q. Melinda, last spring was Eddie Shannon your boyfriend?
"A. Yes, sir.

*537 "Q. Last springlate in 1985, did you have a sexual relationship with your father?
"MR. KOMINOS [defense counsel]: Your Honor, I'm going to object. That's leading and highly prejudicial and I ask for a mistrial.
"THE COURT: I overrule. Motion for mistrial denied.
"MR. EMERY [prosecuting attorney]: Did you?
"A. Yes, sir.
"Q. Did that relationship involve sexual intercourse?
"A. Yes.
"MR. KOMINOS: Your Honor, I'm going to object. He's leading and this is not material to the sentencing phase of the trial.
"THE COURT: I overrule your objection."
Appellant argues that the admission of the testimony of other offenses, which he characterizes as "incest" and "sexual misconduct," violated the general exclusionary rule which prohibits the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. The cases cited by appellant in support of his contention discuss the general rule, but none involves the admissibility of evidence of other crimes in a sentencing hearing in a capital case.
The admissibility of evidence at the jury sentencing hearing in a capital case is governed by §§ 13A-5-45(c) and (d), Code of Alabama 1975, which state:
"(c) At the sentence hearing evidence may be presented as to any matter that the court deems relevant to sentence and shall include any matters relating to the aggravating and mitigating circumstances referred to in sections 13A-5-49, 13A-5-51 and 13A-5-52. Evidence presented at the trial of the case may be considered insofar as it is relevant to the aggravating and mitigating circumstances without the necessity of re-introducing that evidence at the sentence hearing, unless the sentence hearing is conducted before a jury other than the one before which the defendant was tried.
"(d) Any evidence which has probative value and is relevant to sentence shall be received at the sentence hearing regardless of its admissibility under the exclusionary rules of evidence, provided that the defendant is accorded a fair opportunity to rebut any hearsay statements. This subsection shall not be construed to authorize the introduction of any evidence secured in violation of the Constitution of the United States or the state of Alabama."
We find the testimony that Melinda Hallford had been having an incestuous relationship with her father prior to the killing was relevant and of probative value in the sentencing aspect of the trial. It was relevant to negate any claim by appellant that he had no significant history of prior criminal activity. § 13A-5-51(1). In addition, appellant had testified during the guilty phase of the trial that he had given his children, including Melinda, a home and had taken care of them when no one else would. This testimony was before the jury for their consideration of a proper sentence. § 13A-5-45(c). Thus, the testimony of the incestuous relationship was also admissible for the purpose of negating appellant's testimony, which obviously had been offered in an effort to portray himself as a good father and therefore a person of good character. § 13A-5-52.
Accordingly, we find that the testimony of Melinda Hallford that she had been having sexual intercourse with her father, appellant, was properly admitted.

IX
Appellant contends that the trial court erred in its written finding of facts summarizing the crime and appellant's participation in it, § 13A-5-47(d). He argues that the trial court made findings which were not supported by the evidence. We do not agree. He claims that there was no evidence from which the trial court could have concluded that he took the victim's wallet and shoved or rolled him into the river; that the victim was still alive when *538 he was shot the second and third times; or that appellant was engaged in the commission of a robbery at the time of the killing. We find that there was ample evidence from which the trial court could have reasonably inferred that appellant took the victim's wallet and shoved or rolled him into the river, that the victim was alive when shot the second and third times, and that appellant was engaged in the commission of a robbery at the time of the killing.
Appellant also contends that the trial court erred in finding, as an aggravating circumstance, that the capital offense was committed while appellant was engaged in the commission of a robbery. He relies on Bufford v. State, 382 So.2d 1162 (Ala.Cr.App.1980), cert. denied, 382 So.2d 1175 (Ala.1980). Bufford was based on the earlier case of Keller v. State, 380 So.2d 926 (Ala.Cr.App.1979), cert. denied, 380 So.2d 938 (Ala.1980), which has been implicitly overruled in Ex parte Kyzer, 399 So.2d 330 (Ala.1981). Dobard v. State, 435 So.2d 1338, 1344 (Ala.Cr.App.1982), aff'd, 435 So.2d 1351 (Ala.1983), cert. denied, 464 U.S. 1063, 104 S.Ct. 745, 79 L.Ed.2d 203 (1984). Appellant's contention is contrary to the 1981 capital murder statute, under which he was convicted. Section 13A-5-50 provides as follows:
"The fact that a particular capital offense as defined in section 13A-5-40(a) necessarily includes one or more aggravating circumstances as specified in section 13A-5-49 shall not be construed to preclude the finding and consideration of that relevant circumstance or circumstances in determining sentence.
"By way of illustration and not limitation, the aggravating circumstance specified in section 13A-5-49(4) shall be found and considered in determining sentence in every case in which a defendant is convicted of the capital offenses defined in subdivisions (1) through (4) of subsection (a) of section 13A-5-40."
This case falls directly within § 13A-5-50, because appellant was convicted of robbery/murder under 13A-5-40(a)(2) and the aggravating circumstance was that under § 13A-5-49(4). Therefore, we find no merit to this contention.
Appellant also argues that the trial court erred in finding, as an aggravating circumstance, that the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses. We find no merit to this contention. The trial court found that appellant, after luring the 16-year-old boy to the isolated area near the river, shot him in the mouth, rendering him defenseless. The trial court further found that appellant then dragged and marched the helpless and pleading victim to the river, where he shot him in the head twice more and shoved him in the river after taking his wallet. These findings could reasonably be inferred from, and are consistent with, the evidence. The trial court determined that this was "an execution type slaying, evincing a cold blooded, calculated design to kill." We agree. This court finds that a killing of the type here falls within the category of heinous, atrocious, or cruel killing. See Ex parte Kyzer; Hubbard v. State, 500 So.2d 1204 (Ala.Cr.App.), aff'd, 500 So.2d 1231 (Ala.1986); Bush v. State, 431 So.2d 555 (Ala.Cr.App.1982), aff'd, 431 So.2d 563 (Ala.), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983).

X
Appellant contends that the trial court erred in denying his motion for a new trial. All issues raised in the motion for new trial, except that raised in paragraph 15, have been previously addressed in this opinion and resolved adversely to appellant. The issue in paragraph 15 involves the trial court's refusal to permit individual voir dire examination of the prospective jurors. Even in capital cases, there is no requirement that a defendant be allowed to question each prospective juror individually during voir dire examination, and it is within the trial court's discretion whether to allow such a request. Bell v. State, 475 So.2d 601 (Ala.Cr.App.1984), aff'd, 475 So.2d 609 (Ala.), cert. denied, 474 U.S. 1038, 106 S.Ct. 607, 88 L.Ed.2d 585 (1985); Raines v. State, 429 So.2d 1104 (Ala.Cr.App.), aff'd, 429 So.2d 1111 (Ala.1982), cert. denied, 460 U.S. 1103, 103 S.Ct. 1804, 76 L.Ed.2d 368 *539 (1983). The decision of the trial court in denying individual voir dire examination will not be disturbed absent abuse of that discretion. We find no abuse here.
The decision to grant or deny a motion for a new trial rests within the sound discretion of the trial court; and, on review, every presumption of correctness will be bestowed upon the decision, and it will not be disturbed absent abuse. Smiley v. State, 435 So.2d 202 (Ala.Cr.App.1983). We find no abuse of discretion in denying the motion for a new trial, and the decision should not be disturbed.

XI
In accordance with A.R.A.P. 45A, we have examined the instant record for any plain error, whether or not brought to our attention or the attention of the trial court. We have found no "plain error or defect in the proceedings," either in the guilt phase or in the sentencing phases of the trial.
We have also reviewed appellant's sentence by the provisions of § 13A-5-53, Code of Alabama 1975. Section 13A-5-53(a) requires that, in addition to reviewing the case for any error involving the conviction, we shall also review the propriety of the death sentence. This review shall include our determination of the following: (1) whether any error adversely affecting the rights of the defendant was made in the sentence proceedings; (2) whether the trial court's findings concerning the aggravating and mitigating circumstances were supported by the evidence; and (3) whether death is the appropriate sentence in the case. Section 13A-5-53(b) requires that, in determining whether death is the proper sentence, we determine: (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor; (2) whether an independent weighing by us of the aggravating and mitigating circumstances indicates that death is the proper sentence; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant.
After appellant was convicted of the capital offense charged, a separate sentence hearing was held before the jury in accordance with §§ 13A-5-45 and -46. After hearing evidence concerning aggravating and mitigating circumstances; after being properly instructed by the trial court as to the applicable law; and after being correctly advised as to its function in reference to any finding of aggravating and mitigating circumstances, the weighing of those circumstances, if appropriate, and its responsibility in reference to the return of an advisory verdict; the jury, by a vote of ten to two, returned the following verdict: "We the jury, recommend that the defendant, Phillip D. Hallford, should be punished by death...."
Thereafter, the trial court held another hearing, in accordance with § 13A-5-47, to aid it in determining whether it would sentence appellant to death as recommended by the jury or to life imprisonment without the possibility of parole. The trial court ordered and received a written pre-sentence investigation report, as required by § 13A-5-47(b). Upon conclusion of the hearing, the trial court entered specific written findings concerning the existence or non-existence of each aggravating circumstance enumerated in § 13A-5-49 and the existence or non-existence of any mitigating circumstance in § 13A-5-51 and § 13A-5-52, as well as written findings of fact summarizing the crime and appellant's participation in it. In its findings of fact (see "Appendix"), the trial court found the existence of the following aggravating circumstances: (1) That the capital offense was committed while the defendant was engaged in the commission of, or an attempt to commit, or flight after committing or attempting to commit robbery, § 13A-5-49(4); and (2) that the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses, § 13A-5-49(8). The trial court examined the evidence for mitigating circumstances, pursuant to the requirements of §§ 13A-5-51 and -52, and found none.
Thus, the trial court found the existence of two aggravating circumstances and no *540 mitigating circumstances. It properly weighed the aggravating circumstances against the total lack of mitigating circumstances and, finding the aggravating circumstances sufficient to support the sentence of death recommended by the jury, sentenced appellant to death.
Appellant was convicted of the offense of murder committed during a robbery in the first degree, § 13A-5-40(a)(2). This offense is, by statutory definition and designation, a capital offense. We take judicial notice that similar crimes are being punished capitally throughout this state. See, e.g., Thomas v. State, 460 So.2d 207 (Ala.Cr.App.1983), aff'd, 460 So.2d 216 (Ala.1984); Waldrop v. State, 459 So.2d 953 (Ala.Cr.App.1983), aff'd, 459 So.2d 959 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2050, 85 L.Ed.2d 323 (1985); Weeks v. State, 456 So.2d 395 (Ala.Cr.App.1983), aff'd, 456 So.2d 404 (Ala.1984), cert. denied, 471 U.S. 1030, 105 S.Ct. 2051, 85 L.Ed.2d 324 (1985); Colquitt, The Death Penalty Laws of Alabama, 33 Ala.L.Rev. 213, 225 (1982). Two-thirds of the death sentences imposed in Alabama are in cases of robbery-murder. Thomas, 460 So.2d at 225.
We have carefully searched the record of both the guilt and the sentence phases of appellant's trial, and we have found no reversible error. In reviewing the sentence, we find no evidence that the sentence was imposed under the influence of passion, prejudice, or any other arbitrary factor. We find that the findings and conclusions of the trial court are strongly supported by the evidence. We concur in the recommendation of the jury and the verdict of the trial court that death is the appropriate sentence in this case. Our independent weighing of the aggravating circumstances, while we note the absence of mitigating circumstances, convinces us that the sentence of death is appropriate in relation to this defendant. Considering the crime committed and the defendant, we find that the sentence of death is neither excessive nor disproportionate to the penalty imposed in similar cases. Accordingly, appellant's conviction and sentence of death are due to be, and they are hereby, affirmed.
AFFIRMED.
All Judges concur.

ON APPLICATIONS FOR REHEARING
PATTERSON, Judge.
Both appellant and appellee have filed applications for rehearing.
Appellant filed his application for rehearing, with supporting brief, on June 24, 1988. He raises no new issues in this application, and all issues raised therein were fully addressed and considered by us in our opinion of June 14, 1988, affirming the conviction and sentence.
On July 13, 1988, appellant filed an "addendum" to his application, directing our attention to the recent decision of the United States Supreme Court in the case of Maynard v. Cartwright, 486 U.S. 356, 108 S.Ct. 1853, 100 L.Ed.2d 372 (1988). He contends, in his supplemental brief, that the Court in Maynard found the aggravating circumstance that the murder was "especially heinous, atrocious or cruel" in the Oklahoma capital murder statute, Okla.Stat., Tit. 21, § 701.12(4) (1981), unconstitutionally vague under the Eighth Amendment. He argues that, due to the similarity between this aggravating circumstance in the Oklahoma statute and the aggravating circumstance in the Alabama statute, which we are concerned with herethat the capital offense was especially heinous, atrocious or cruel compared to other capital offenses, § 13A-5-49(8)Maynard applies to the instant case and requires that we reverse and remand this cause for redetermination of the appropriate sentence.
In Maynard, the jury, the sentencing authority in Oklahoma, was instructed solely in the words of the statute, without any instructions as to what these words meant in the context of a capital crime or what facts would justify the finding of the aggravating circumstance. Furthermore, the Oklahoma appellate court did not examine the jury's finding of the aggravating circumstance in light of any limiting construction, *541 but held only that the crime itself supported the finding. The Supreme Court of the United States held that the words of the aggravating circumstance themselves give little guidance as to what facts would be applicable and that, when the jury is given no limiting instructions and the appellate court does not declare any standard by which it is reviewing the finding, the aggravating circumstance as applied in that case is unconstitutional. The Supreme Court indicated that it was not prescribing any particular construction of the aggravating circumstance; it only required that it be limited in some meaningful way.
Maynard is, in effect, a restatement of the holding in Godfrey v. Georgia, 446 U.S. 420, 100 S.Ct. 1759, 64 L.Ed.2d 398 (1980) (plurality opinion), which the Court found controlling in Maynard. In Godfrey, the Court dealt with a somewhat similar aggravating circumstance, i.e., that the offense "was outrageously or wantonly vile, horrible or inhuman in that it involved torture, depravity of mind, or an aggravated battery to the victim." As was the case in Maynard, the jury was merely read the statutory language with no explanatory instructions. 446 U.S. at 426, 100 S.Ct. at 1763. The Georgia Supreme Court affirmed the finding of the aggravating circumstance without discussing any standard for its review. Id. at 426-27, 100 S.Ct. at 1763-64. The United States Supreme Court reversed, holding that a capital sentence scheme must channel the sentencer's discretion by clear and objective standards and must provide a meaningful basis for distinguishing cases in which the death penalty should be imposed from those in which it should not. Id. at 427-29, 100 S.Ct. at 1764-65. The Court held that the failure to instruct the jury beyond the words of the statute was not cured by the review of the Georgia Supreme Court because, like the state appellate court in Maynard, the Georgia Supreme Court pronounced no standard for judging the existence of this aggravating circumstance.
The case at bar is distinguishable from Maynard and Godfrey. Unlike the jury in Maynard and Godfrey, the jury in the instant case was instructed on the meaning of the words of the aggravating circumstance in the context of capital sentencing. These instructions correctly followed the previously recognized limiting construction of the aggravating circumstance established by the Alabama Supreme Court in Ex parte Kyzer, 399 So.2d 330 (Ala.1981), wherein the court stated, "The aggravating circumstance listed in § 13-11-6(8) [now § 13A-5-49(8)] was intended to apply to only those conscienceless or pitiless homicides which are unnecessarily torturous to the victim." Id. at 334. In defining the circumstances under which the aggravating circumstance could be applied, the Alabama Supreme Court expressly followed Godfrey. Id.
In this case, the trial court instructed the jury, in pertinent part, as follows:
"The law of this State provides a list of aggravating circumstances which may be considered by the jury in recommending punishment if the jury is convinced beyond a reasonable doubt from the evidence that one or any of such aggravating circumstances exists in this case.
"The same definitions that I gave you yesterday concerning reasonable doubt, apply to this matter also. If the jury is not convinced beyond a reasonable doubt, based upon the evidence, that one or more of such aggravating circumstances exists, then the jury must recommend that the Defendant's punishment be life imprisonment without parole, regardless of whether or not there are any mitigating circumstances.
"Of the list of aggravating circumstances provided by law, there are two circumstances which you may consider in this case if you are convinced beyond a reasonable doubt and to a moral certainty based upon the evidence that such circumstances do exist.
"The fact that I instruct you on such aggravating circumstances, or define them for you, does not mean that the circumstances or any other aggravating circumstances have been proven beyond a reasonable doubt in this matter. Whether or not any aggravating circumstances which I instruct you on or define *542 for you have been proven beyond a reasonable doubt, based upon the evidence in this case, is a matter for you and you alone to determine.
"The aggravating circumstances which you may consider in this case, if you find from the evidence that ... [they have been proven] beyond a reasonable doubt are as follows: ... that would be that the capital offense was committed while the Defendant was engaged in or was an accomplice in the commission of or an attempt to commit or flight after committing or attempting to commit a robbery.
"The other aggravating circumstance that you may consider would be that the capital offense was especially heinous, atrocious or cruel compared to other capital offenses. The term `heinous' means extremely wicked or shockingly evil. The term `atrocious' means outrageously wicked and violent. The term `cruel' means designed to inflict a high degree of pain with utter indifference to or even enjoyment of the suffering of others.
"What is intended to be included in this aggravating circumstance are those cases where the actual commission of a capital offense is accompanied by such additional acts as to set the crime apart from the norm of capital offenses.
"For a capital offense to be especially heinous or atrocious, any brutality which is involved in it must exceed that which is normally present in any capital offense.
"For a capital offense to be especially cruel, it must be a conscienceless or pitiless crime which is unnecessarily torturous to the victim.
"All capital offenses are heinous, atrocious and cruel to some extent. What is intended to be covered by these aggravating circumstances are only those cases in which the degree of heinousness, atrociousness and cruelty [exceeds] that which would always exist when a capital offense is committed.
"Now, as I have stated to you before, the burden of proof is upon the State to convince each of you beyond a reasonable doubt as to the existence of any aggravating circumstances considered by you in determining what punishment is to be recommended in this case. This means that before you can even consider recommending that the Defendant's punishment be death, each and every one of you must be convinced beyond a reasonable doubt, based on the evidence, that at least one or more of the aggravating circumstances exists."
After the jury returned an advisory verdict recommending that the penalty be death and after the trial court conducted a second sentencing hearing, the trial court found, inter alia, the following:
"The Court has considered each aggravating circumstance enumerated in Section 13A-5-49, Code of Alabama (1975), and the Court finds that the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit Robbery.
"The Court further finds that the capital offense in this cause was especially heinous, atrocious or cruel compared to other capital cases.
"Phillip Hallford, age 39, instructed his 15-year-old daughter to lure Eddie Shannon, age 16, to an abandoned road near a closed out bridge over the Choctawahatchee River. Based on the reasonable inference from the evidence, the defendant lured the 16-year-old boy to this area so that he could kill him in front of his daughter and stepson and dispose of the body. The defendant hid in the dark and after the deceased approached the car, he shot the deceased through the roof of his mouth. He then dragged or pulled the pleading victim along to the bridge where he shot him two more times in the head. He removed his wallet and other items that would help identify the victim and shoved him into the river, knowing that after so long the body would decompose.
"This was an execution type slaying, evincing a cold blooded, calculated design to kill. The defendant deliberately shot the victim in the roof of the mouth and after the victim was virtually defenseless, but still conscious, he shot the victim *543 in the head two more times and threw the victim into the river to avoid later identification. The conduct of the defendant throughout this episode demonstrates conduct that is totally and senselessly bereft and devoid of any regard for human life."
In our opinion of June 14, 1988, we found that the findings and conclusions of the trial court in reference to the existence of the two aggravating circumstances were strongly supported by the evidence. We concluded, after independently weighing the evidence, that the state had met its burden in proving the existence of the two aggravating circumstances. In reaching our conclusion in reference to the aggravating circumstance set out in § 13A-5-49(8), we applied the rule established by the Alabama Supreme Court in Kyzer. See also Bush v. State, 431 So.2d 555 (Ala.Cr.App.1982), aff'd, 431 So.2d 563 (Ala.1983), cert. denied, 464 U.S. 865, 104 S.Ct. 200, 78 L.Ed.2d 175 (1983). The trial court's findings with regard to this aggravating circumstance are detailed and thorough. They reflect a correct understanding and application of the law. It is apparent that the trial judge, in weighing the evidence presented as to the aggravating circumstance that the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses, was being guided by the limitations established in Kyzer and applied in Bush. This is even more apparent from a reading of the court's findings in light of its instructions to the jury, for as we have already ruled, the trial court properly and thoroughly charged the jury in reference to the law pertaining to the limitations placed upon the construction of the aggravating circumstance found in § 13A-5-49(8) by Kyzer.
Moreover, in finding that the instant killing "was an execution type slaying, evincing a cold blooded, calculated design to kill," the trial court obviously recognized the appropriate application of the principles of Bush. The slaying in the case at bar was not an instantaneous death caused by gunfire, which the Bush court recognized to ordinarily not constitute a heinous killing. 431 So.2d at 560. Rather, appellant "deliberately [shot] a victim in the head in a calculated fashion to avoid later identification, after the victim [had] already been rendered helpless by gunshot." Id. at 560-61. Obviously, the trial court concluded that these circumstances clearly set the crime apart from the norm of other capital offenses and met the standard of Kyzer.
We further find from the evidence that appellant used his young daughter to lure the victim to an isolated area near the river so that he could kill the victim and dispose of the body. After admonishing the victim about associating with his daughter, he shot the victim in the mouth, and while the victim was still conscious and protesting, he marched or dragged him by the hair of the head to the river, where he fired two more shots into the victim's head and threw him into the river. The evidence supports the conclusion that the victim was alive, conscious, and pleading as he was being marched to the river. One can only imagine the pain and terror which must have been experienced by this young man. We once again find this conduct to be conscienceless, pitiless, and unnecessarily torturous to the victim. We have weighed this evidence in the light of the limitations placed upon the construction of this aggravating circumstance and conclude that it satisfies the requirements of Kyzer. We find that this aggravating circumstance was also proven beyond a reasonable doubt.
Appellant seems to argue that the aggravating circumstance is unconstitutional on its face. If this is his argument, it is without merit. The aggravating circumstance is not unconstitutional on its face. Godfrey v. Georgia; Gregg v. Georgia, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Court in Maynard held the Oklahoma aggravating circumstance to be unconstitutional as it was applied in that case.
For the above reasons, we hold that Maynard has no application to this case. In considering appellant's application for rehearing, we have reviewed our opinion and decision of affirmance and considered appellant's briefs filed in support of his application, *544 and we are not persuaded to alter our holding. The application for rehearing is overruled.
The application for rehearing filed by the appellee, the State of Alabama, is in the nature of a request for modification of that portion of our opinion wherein we held that the testimony of Melinda Hallford that she had been having an incestuous relationship with her father prior to the killing was relevant and of probative value in the sentencing aspect of the trial. We held it relevant on two grounds: (1) To rebut the mitigating circumstance under § 13A-5-51(1) of no significant history of prior criminal activity; and (2) to negate appellant's attempt to establish his general good character as a non-statutory mitigating circumstance under § 13A-5-52. The state calls our attention to Cook v. State, 369 So.2d 1251 (Ala.1979), wherein the Alabama Supreme Court held that only convictions can be used to negate the statutory mitigating circumstance of no significant history of prior criminal activity. We find merit in the state's application for modification in this regard, and we amend our opinion by striking therefrom that portion of the opinion which holds that the testimony of Melinda Hallford that she was having an incestuous relationship with her father was relevant to negate any claim by appellant that he had no significant history of prior criminal activity. While Cook v. State was decided under Ala.Code § 13-11-1, et seq. (repealed), Alabama's previous capital penalty statute, its holding is applicable here.
We are still of the opinion, however, that the testimony of the incestuous relationship was admissible for the purpose of negating appellant's testimony, which obviously had been offered in an effort to portray himself as a good father and, therefore, a person of good character. Thus, since the testimony is admissible for the other reason cited above, the modification of our original opinion does not affect our decision affirming the conviction and sentence.
OPINION MODIFIED AND EXTENDED; APPLICATIONS FOR REHEARING OVERRULED.
All Judges concur.

APPENDIX

The State of Alabama, Plaintiff,

vs.

Phillip D. Hallford, Defendant.

In the Circuit Court of Dale County, Alabama

Case No. CC-86-251

Filed April 21, 1987

WRITTEN FINDINGS AND ORDER PURSUANT TO 13A-5-47, CODE OF ALABAMA (1975)
This the 16th day of April, 1987, being the date set for a hearing, in accordance with Sec. 13A-5-47, Code of Alabama (1975), to determine whether or not the Court will sentence the defendant, Phillip D. Hallford, to death or to life imprisonment without parole after the following verdict was rendered on the 4th day of March, 1987: "We, the Jury, find the defendant guilty of Capital Murder-Robbery as charged in the Indictment," and after the Jury rendered the following verdict on the 5th day of March, 1987: "We, the Jury, recommend that the defendant, Phillip D. Hallford, should be punished by death". (10death; 2life without parole).
And the Court having Ordered and received a written pre-sentence investigation report in accordance with lawa copy of which was duly served upon the attorney for the defendant,
And the defendant, Phillip D. Hallford, being present in open court at this hearing with his attorney, the Honorable Bill Kominos, and the State being represented by the Honorable David C. Emery, District Attorney,
And evidence and argument being presented to the Court concerning the existence of aggravating and mitigating circumstances and the proper sentence to be imposed in this case,
*545 And the Court having considered all of the evidence presented at trial of this cause on March 2, 3, and 4, 1987, and the evidence presented at the sentencing hearing on March 5, 1987, and the pre-sentence investigation report and any evidence submitted in connection therewith and the evidence and argument presented at the Court's sentencing hearing on April 16, 1987, the Court finds as follows:
On April 12 or April 13, 1987, Phillip D. Hallford instructed his daughter Melinda Hallford, age 15, to call the deceased, Charles Eddie Shannon, age 16. Melinda was to arrange a meeting between herself and Eddie on an abandoned road leading to an old abandoned bridge traversing the Choctawahatchee River in Dale County, Alabama.
After the call, around 1:00 A.M. on April 13, 1986, Eddie Shannon went to the designated place to meet Melinda.
Phillip Hallford and his step-son, Sammy Joe Robbins, went with Melinda to the meeting place in Phillip Hallford's car. Phillip Hallford and Sammy Joe Robbins left the car and hid in the dark. Melinda Hallford remained in the car on the driver's side. Eddie Shannon came up to the car and began talking to Melinda. Phillip Hallford then approached Eddie, turned him around and after a brief struggle, shot Eddie Shannon through the roof of the mouth with a .22 pistol. During this confrontation, Phillip Hallford made the statement in substance as follows: "This will teach you to f ... with someone else's ass." Hallford then dragged Eddie down to the old bridge. Sammy Joe and Melinda heard two more shots. According to the autopsy, these two shots would have been to the forehead and above the left ear.
Phillip Hallford took Eddie's wallet and then rolled him into the river.
Phillip Hallford, Sammy Joe Robbins and Melinda Hallford returned home. Sammy Joe and Phillip Hallford returned to the scene later with a 5 gallon gas jug and broom and cleaned up the blood on the bridge. Later, according to the testimony of Sammy Joe, Sammy Joe and Phillip Hallford returned to the new bridge with a shotgun to see if the body was floating or visible and if so, they planned to sink it.
The Court further finds from the testimony of Melinda Hallford given at the sentencing hearing before the jury that she and her father had had sexual relations for several years and that he was jealous of her.
The Court further finds that Phillip Hallford planned to kill Charles Eddie Shannon and cover up the crime by disposing of the body in such a way so that it could not be found or identified and in so doing, he stole Eddie Shannon's wallet and shoved him into the river.
The Court finds that the Robbery of the billfold was not committed as a mere afterthought, but was part of a plan to cover up the crime and the identity of the victim.
In accordance with Connally [Connolly] v. State, 500 So.2d 56 [57] ([Ala.Cr.App.] 1985 [1986]), and Johnson v. State, 479 So.2d 1377 ([Ala.Cr.App.] 1985), and the evidence in the case, the Court finds that Phillip Hallford is guilty of violating Section 13A-5-40(2), that is: Murder by the defendant during a Robbery in the first degree or an attempt thereof committed by the defendant.
The defendant is guilty of intentionally causing the death of Charles Eddie Shannon by shooting him with a pistol and causing Eddie Shannon's death during the time that the defendant was in the course of committing the theft of Eddie Shannon's billfold by the use of force against Eddie Shannon with the intent to overcome Eddie Shannon's physical resistance or physical power of resistance while he was armed with a pistol.
The Court has considered each aggravating circumstance enumerated in Section 13A-5-49, Code of Alabama (1975), and the Court finds that the capital offense was committed while the defendant was engaged in the commission of or an attempt to commit or flight after committing or attempting to commit Robbery.
The Court further finds that the capital offense in this cause was especially heinous, atrocious or cruel compared to other capital cases.
*546 Phillip Hallford, age 39, instructed his 15-year-old daughter to lure Eddie Shannon, age 16, to an abandoned road near a closed out bridge over the Choctawahatchee River. Based on the reasonable inference from the evidence, the defendant lured the 16-year-old boy to this area so that he could kill him in front of his daughter and stepson and dispose of the body. The defendant hid in the dark and after the deceased approached the car, he shot the deceased through the roof of his mouth. He then dragged or pulled the pleading victim along to the bridge where he shot him two more times in the head. He removed his wallet and other items that would help identify the victim and shoved him into the river, knowing that after so long the body would decompose.
This was an execution type slaying, evincing a cold blooded, calculated design to kill. The defendant deliberately shot the victim in the roof of the mouth and after the victim was virtually defenseless, but still conscious, he shot the victim in the head two more times and threw the victim into the river to avoid later identification. The conduct of the defendant throughout this episode demonstrates conduct that is totally and senselessly bereft and devoid of any regard for human life.
The Court finds that the other enumerated aggravating circumstances are not applicable to the case.
The Court has considered each mitigating circumstance enumerated in Section 13A-5-15, Code of Alabama (1975), and any additional mitigating circumstance offered by the defendant or evident from the evidence in the case or any evidence touching on any mitigating circumstance.
In so considering the enumerated mitigating circumstances, the Court finds that the defendant was convicted of Grand Larceny in 1966, violating U.S. Code, Title 18, Sec. 2313concealing, selling and disposing of a stolen motor vehicle in 1983; that the capital offense was not committed while the defendant was under the influence of extreme mental or emotional distress; the victim was not a participant in the defendant's conduct and did not consent to it; the defendant was not an accomplice, but the actual killer; the defendant was not acting under extreme duress or under the substantial domination of another person; the defendant did appreciate the criminality of his conduct, was fully aware of what he was doing, and it was wrong, and that his capacity to conform his conduct to the requirement of law was not substantially impaired; and the defendant was 39 years old when the crime was committed. The Court finds from the evidence that there were no additional mitigating circumstances. The Court has merely tallied the aggravating or mitigating circumstances for the purpose of numerical comparison. The Court has considered all of the evidence in the case. The Court has weighed the aggravating and mitigating circumstances against each other. The Court finds that the aggravating circumstance[s] which exists outweigh the mitigating circumstance which exist [sic]. And the Court further has considered the recommendation of the Jury contained in its advising verdict.
And the Court having considered all of the above, finds that the defendant, Phillip D. Hallford, should be sentenced to death and is hereby sentenced to death.
IT IS THEREFORE ORDERED AND ADJUDGED by the Court that the Warden of the William C. Holman Unit of the prison system at Atmore, Alabama, or such other officer who is authorized by law shall, at any time before the hour of sunrise, on Tuesday, the 26th day of May, 1987, in a room arranged for the purpose of electrocuting convicts sentenced to death by electrocution, cause to pass through the body of Phillip D. Hallford, a current of electricity of sufficient intensity to cause his death ... until the said Phillip D. Hallford be dead.
IT IS FURTHER ORDERED by the Court that the Clerk of this Court shall issue the necessary warrant for the execution of said defendant as required by law.
And thereupon the defendant gave notice of appeal and moved the Court to suspend execution of the sentence pending an appeal. IT IS THEREFORE ORDERED *547 AND ADJUDGED that execution of the sentence in this case be and the same is hereby suspended pending an appeal.
AND IT IS FURTHER ORDERED AND ADJUDGED that the Sheriff of Dale County be and is hereby ORDERED to transport the said Phillip D. Hallford to the State Prison System there to be held pending an appeal in this case.
THIS the 16 day of April, 1987.
 (s) P.B. McLauchlin, Jr.
 P.B. McLauchlin, Jr., Judge
 33rd Judicial Circuit
 Dale County, Alabama
NOTES
[1] This provision of the Act appears in the Alabama Code as § 13A-5-40(a)(2), Code of Alabama 1975.
[2] Section 13A-5-46(f) requires that an advisory verdict recommending death be based on a vote of at least ten jurors.
[3] The trial court's sentencing order, setting out written findings as to aggravating and mitigating circumstances and setting out written findings of fact summarizing the crime and appellant's participation in it, is attached hereto as an appendix and is made a part of this opinion.