[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 05-12621

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
August 11, 2006
THOMAS K. KAHN
CLERK

D. C. Docket No. 95-01413 CV-CSC

PHILLIP D. HALLFORD,

                                    Petitioner-Appellant,

      versus

GRANTT CULLIVER,
Warden of Holman State Prison,
TROY KING, The Attorney General
of the State of Alabama,

                                    Respondents-Appellees.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(August 11, 2006)**

Before EDMONDSON, Chief Judge, MARCUS and WILSON, Circuit Judges.

PER CURIAM:

Phillip D. Hallford appeals the denial of his 28 U.S.C. § 2254 petition challenging his conviction and death sentence. Hallford argues that he suffered prejudice in violation of Brady v. Maryland, 83 S.Ct. 1194 (1963), that his trial counsel was ineffective during the penalty phase, and that the evidence was legally insufficient to support the "especially heinous, atrocious, or cruel" aggravating circumstance. We now affirm Hallford's conviction and sentence.

## I. BACKGROUND

Hallford was convicted of the capital offense of murder committed during the course of a robbery in violation of ALA. CODE § 13A-5-40(a)(2). Hallford's victim was 16-year old Charles Eddie Shannon, the boyfriend of Hallford's daughter, Melinda. The Alabama Court of Criminal Appeals summarized the facts of the murder-robbery this way:

> The state's evidence at the guilt phase of [Hallford's] trial tended to show that in the early morning of April 13, 1986, [Hallford] forced his daughter to entice her boyfriend, Charles Eddie Shannon, to a secluded bridge. He then shot Shannon once in the roof of the mouth. While Shannon was still alive, Hallford dragged him to the side of the bridge and shot him two more times, once in the front of

2

the left ear and once in the forehead. [Hallford] then threw the body over the bridge railing and into the water.

Sometime after the shooting, [Hallford] returned to the scene of the crime to remove the blood from the bridge. The next day [Hallford] burned the victim's wallet and its contents. These events were witnessed in part by [Hallford's] daughter and his son, who testified against him at trial. While [Hallford] was burning the victim's wallet he commented that the victim was a "cheapskate" because he said he found no money in the wallet. However, the victim's father testified that he had given the victim money on the afternoon of his disappearance. The victim's badly decomposed body was discovered in the water approximately two weeks after the shooting.

[Hallford] maintained at trial that he did not kill the victim and that he was nowhere near the bridge when the murder occurred.

Hallford v. State, 629 So. 2d 6, 7-8 (Ala. Crim. App. 1992).

The jury convicted Hallford and, by a 10-2 vote, recommended that Hallford receive the death penalty based on two aggravating circumstances: (1) that the murder occurred during the commission of a robbery, and (2) that it was "especially heinous, atrocious, or cruel." The trial court sentenced him to death. The Alabama Court of Criminal Appeals and the Alabama Supreme Court affirmed Hallford's conviction and sentence on direct appeal. Hallford v. State, 548 So. 2d 526 (Ala. Crim. App. 1988), aff'd, 548 So. 2d 547 (Ala. 1989), cert. denied, 110 S.Ct. 354 (1989).

Hallford filed a motion for state post-conviction relief pursuant to ALA. R. CRIM. P. 32. The trial court denied post-conviction relief, and the Alabama Court

of Criminal Appeals affirmed the denial. Hallford v. State, 629 So. 2d 6 (Ala. Crim. App. 1992), cert. denied, 114 S.Ct. 1870 (1994). Hallford then filed a petition for federal habeas corpus relief pursuant to 28 U.S.C. § 2254. The district court denied his petition, and Hallford appeals.[1]

A. Facts for the Brady Claim

Although the State presented several witnesses, Hallford's daughter, Melinda, was perhaps the most incriminating single witness. During the guilt phase of the trial, Melinda described Hallford's plot to lure Shannon to him and the graphic details of the murder. Melinda was also the only witness to identify directly the wallet Hallford burned as Shannon's. Her further testimony during the penalty phase -- where she was the only witness for the State -- described her sexual relationship with Hallford that began when she was seven or eight years old; Melinda testified that she and her father were engaged in an incestuous relationship when she became romantically involved with Shannon.

---

[1]By the parties' consent, the federal post-conviction proceedings were conducted by a United States Magistrate Judge in accordance with 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. The Magistrate Judge entered the final judgment for the United States District Court for the Middle District of Alabama. To be clear, we refer to the Magistrate Judge's findings and decisions as those of the district court.

The gravamen of Hallford's <u>Brady</u> claim is that Melinda testified pursuant to a plea agreement of which Hallford's trial counsel was never made aware and about which the jury never learned. The prosecutor initially sought to charge Melinda as an adult and prosecute her for intentional murder along with Hallford. The lead investigator in the case, Walter Ford, found Melinda initially uncooperative; before her arrest Melinda was reluctant to speak with Ford, and she denied having sexual contact with Shannon, calling Shannon to the bridge, or being with Shannon at the bridge where he was killed. But Melinda did cooperate in the investigation after she struck a plea agreement in which she agreed to testify against Hallford in exchange for the prosecutor's agreement not to prosecute her as an adult.[2] The plea agreement was never memorialized in writing.

Twice before trial, Hallford's trial counsel requested all exculpatory <u>Brady</u> material. But at no time before trial did the State disclose the plea agreement.[3] As the district court wrote, "the jury heard no testimony during either the guilt or penalty phases of Hallford's trial that Melinda was testifying pursuant to a plea

---

[2]Melinda pleaded guilty to juvenile delinquency based on a charge of criminally negligent homicide and served no more than 6 weeks in a juvenile facility.

[3]The State explains this discrepancy as the result of a prosecutorial staffing change. The assistant district attorney who ratified Melinda's plea agreement left the prosecutor's office before the trial, and the newly elected district attorney -- who took office shortly before trial -- was never informed about the verbal agreement. No evidence shows that the State intentionally failed to disclose this information.

agreement or that Melinda had originally been charged with the intentional murder of Shannon."

Despite two requests, the State also failed to disclose Melinda's plea agreement to Hallford's counsel during the state post-conviction proceedings. The State advised Hallford's state post-conviction counsel that all information had been disclosed. Yet nothing in counsel's records disclosed the existence of the plea agreement. Hallford included a general Brady claim in his petition for state post-conviction relief, but Hallford failed to argue the claim or include it in his appeal to the Alabama Court of Criminal Appeals. Later, in Hallford's federal section 2254 proceedings, the district court concluded Hallford's Brady claim was procedurally defaulted. And although the district court found cause for the procedural default, the court concluded Hallford did not suffer sufficient prejudice to excuse the default.

B. Facts for the Ineffective Assistance Claim

During the guilt phase of the trial, Hallford testified that he disapproved of certain of his children's acts such as "smoking dope" and that he was a strict disciplinarian. Because Hallford denied committing the murder, he offered this

"good father" explanation to suggest a motive for his children's testimony against him. But this "good father" testimony made it possible for the State to present, during the penalty phase, Melinda's testimony about her incestuous relationship with Hallford.

At the penalty phase, Hallford presented only his mother's testimony in which she pleaded for Hallford's life. Hallford's trial counsel -- who had previously represented Hallford on unrelated matters -- considered but decided not to present psychological or personal background testimony.

## II. STANDARD OF REVIEW

Hallford filed his section 2254 petition before the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). This case is accordingly governed by pre-AEDPA law. See Lindh v. Murphy, 117 S.Ct. 2059, 2068 (1997) (concluding that AEDPA provisions apply "only to cases filed after [AEDPA] became effective"). Under pre-AEDPA law, we review the district court's factual findings for clear error. Johnson v. Alabama, 256 F.3d 1156, 1169 (11th Cir. 2001). The state court's findings of fact generally are accorded a presumption of correctness. Hardwick v. Crosby, 320 F.3d 1127, 1158 (11th Cir.

7

2003). But questions of law and mixed questions of law and fact are not subject to the same presumption. Id. at 1159.

## III. BRADY CLAIM

Hallford claims in his section 2254 petition that he suffered prejudice when the State failed to disclose its plea agreement with Melinda, in violation of Brady v. Maryland, 83 S.Ct. 1194 (1963). But Hallford abandoned this Brady claim during the state post-conviction proceedings. The district court accordingly concluded that Hallford's Brady claim was procedurally defaulted.[4]

But Hallford's procedural default may be excused if he can show cause for the default and prejudice resulting from his failure to raise the claim. Johnson, 256 F.3d at 1171 (citing Murray v. Carrier, 106 S.Ct. 2639, 2644 (1986)).[5] To

---

[4]Hallford's Brady claim was procedurally defaulted under Alabama's procedural rules. When pursuing state post-conviction relief, Hallford did not present his Brady claim to the Alabama Court of Criminal Appeals. "Claims presented in a Rule 32 petition but not pursued on appeal are deemed to be abandoned." Boyd v. State, 913 So. 2d 1113, 1145 (Ala. Crim App. 2003). And failure to present the claim in state court leads to the claim being procedurally defaulted in federal court. See Collier v. Jones, 910 F.2d 770, 772 (11th Cir. 1990) ("[W]hen a petitioner has failed to present a claim to the state courts and under state procedural rules the claim has become procedurally defaulted, the claim will be considered procedurally defaulted in federal court.")

[5]Hallford may also circumvent the procedural bar by showing that failure to hear his claim would result in "a fundamental miscarriage of justice." Johnson, 256 F.3d at 1171 (citing Murray, 106 S.Ct. at 2649). But this exception is "exceedingly narrow in scope," id., and inapplicable to this case.

prove cause, Hallford must show that "some objective factor external to the defense impeded counsel's efforts" to raise the Brady claim in state court. Murray, 106 S.Ct. at 2645. To prove prejudice, Hallford "must show 'not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions.'" Johnson, 256 F.3d at 1171 (quoting United States v. Frady, 102 S.Ct. 1584, 1596 (1982) (emphasis in original)).

The district court concluded that Hallford showed cause for his procedural default but that he did not sufficiently demonstrate prejudice. Because we conclude that Hallford cannot demonstrate prejudice, we assume without deciding that Hallford has demonstrated sufficient cause to excuse his default.

Hallford contends he suffered prejudice from the State's failure to disclose Melinda's plea agreement because -- as the only witness to give direct evidence that the wallet Hallford burned was Shannon's -- Melinda's testimony was critical to proving the robbery element of the crime. Conviction for capital murder-robbery under Alabama law requires proof beyond a reasonable doubt that "the murder was committed 'in the course of or in connection with the commission of, or in the immediate flight from the commission of' the robbery." Connolly v. State, 500 So. 2d 57, 62 (Ala. Crim. App. 1985), aff'd 500 So. 2d 68 (Ala. 1986)

9

(quoting ALA. CODE § 13A-5-39(2)). Hallford argues that disclosing Melinda's plea agreement would have impeached Melinda's credibility and undermined the State's case. Failure to disclose the agreement, Hallford argues, inflicted unconstitutional error upon the case. We disagree.

The prejudice inquiry used to resolve questions of procedural default is similar to the inquiry used to determine materiality for Brady purposes. Strickler v. Greene, 119 S.Ct. 1936, 1948-49 (1999); Crawford v. Head, 311 F.3d 1288, 1327 (11th Cir. 2002) ("[I]t seems that in practice the inquiries are the same. At the very least, . . . 'prejudice' cannot be established where the Brady materiality standard is not satisfied."). To prove prejudice, Hallford must show a "'reasonable probability' that the result of the trial would have been different if the suppressed documents had been disclosed to the defense." Strickler, 119 S.Ct. at 1952. "The question is not whether the defendant would more likely than not have received a different verdict with the evidence, but whether in its absence he received a fair trial, understood as a trial resulting in a verdict worthy of confidence." Kyles v. Whitley, 115 S.Ct. 1555, 1566 (1995). See also Strickler, 119 S.Ct. at 1952 ("[T]he question is whether the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.") (quotation omitted).

We agree with the district court that "[t]he evidence that Hallford shot and killed Eddie Shannon is overwhelming." The issue here, however, is whether the murder occurred in connection with a robbery. Melinda was the only witness to identify directly the wallet that Hallford burned as Shannon's. That a testifying witness had entered a plea agreement with the prosecution is something that can be material to an accused's defense. See United States v. Bailey, 123 F.3d 1381, 1397 (11th Cir. 1997). But we do not believe that disclosing Melinda's plea agreement would have created a reasonable probability that Hallford's trial would have come out differently.

In addition to Melinda's testimony, the jury heard testimony from Hallford's stepson, Sammy, that matched Melinda's in providing critical details tying Hallford to Shannon's murder and the robbery. Sammy -- as well as Melinda -- testified that he witnessed Hallford attack Shannon with a pistol and described how Sammy helped Hallford destroy evidence that could have tied Hallford to the crime. Sammy testified that on the morning after the murder -- after Hallford had Sammy return to the crime scene with him to wash blood from the bridge and make sure Shannon's body was undetectable -- Hallford told Sammy to build a fire in a drum outside the trailer. According to Sammy, after the fire was lit, Hallford brought out a wallet and burned its contents. Sammy testified that he saw Hallford

11

burn an orange and white military identification card. Sammy did not read the name on the card, and Hallford's thumb obscured the card's picture. Sammy testified that Melinda was present when Hallford burned the wallet.

The victim's step-brother, David Ferguson, testified that Shannon carried a wallet in which he kept an identification card. The victim's father, Olen Johns, who similarly described Shannon's wallet and stated that Shannon's wallet carried his military identification card, testified that he never saw Shannon's wallet after the murder.

Melinda's testimony that Hallford burned Shannon's wallet on the morning after the murder was more specific than the other wallet-related testimony.[6] But -- apart from Melinda's testimony -- the testimony from Sammy, Ferguson, and Johns indirectly identifying Shannon's wallet, when coupled with the other evidence presented at trial, was easily sufficient for a jury to conclude that Hallford had taken (and had then burned) Shannon's wallet. Alabama law provides that a defendant's guilt may be established by circumstantial evidence. McMillian v. State, 594 So. 2d 1253, 1263 (Ala. Crim. App. 1991) ("In reviewing a conviction based on circumstantial evidence, '[t]he test to be applied is whether

---

[6]Melinda identified the wallet Hallford burned as Shannon's. Melinda further testified that Hallford, as he was emptying the wallet's contents, referred to Shannon as a "cheapskate" because he had no money in his wallet and showed Melinda a picture from Shannon's wallet.

the jury might reasonably find that the evidence excluded every reasonable hypothesis except that of guilt. . . .'"). Perhaps the most incriminating circumstantial evidence is the timing of Hallford's acts: Hallford burned a wallet containing a military identification card like Shannon's less than twelve hours after the murder occurred and after spending most of the same morning undertaking efforts to conceal the crime. Shannon's wallet was not recovered with his body.

When determining whether Hallford suffered the kind of prejudice required to excuse his procedural default, we consider disclosure of Melinda's plea agreement against the backdrop of other evidence presented at trial. Crawford, 311 F.3d at 1330-31 (considering suppressed GBI report and concluding that defendant could not demonstrate prejudice to excuse procedural default "given the strong evidence of [defendant's] guilt"). Even if Melinda's plea agreement had been disclosed and her testimony successfully discredited, we conclude that the jury could have reasonably found that the circumstantial evidence of the robbery excluded every reasonable hypothesis except that of guilt. Disclosure of the plea

agreement could not reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict.[7]

Hallford further contends he suffered prejudice from the alleged Brady violation because Melinda was the only witness to testify for the State during the penalty phase. During her penalty phase testimony, Melinda described her incestuous relationship with Hallford and Hallford's jealousy of Shannon. Melinda's testimony was offered to rebut Hallford's testimony during the guilt phase that he was a good father. Hallford contends he suffered prejudice because he was unable to use the plea agreement to impeach Melinda's penalty phase testimony. We disagree.

We accept that the incest evidence may have been shocking. But the trial court properly instructed the jury on how to weigh the evidence and the two aggravating circumstances in recommending Hallford's sentence.[8] Even if

---

[7]Our conclusion is strengthened some by the fact that Hallford did place Melinda's credibility in issue at trial. Hallford suggested during his testimony that Officer Ford improperly influenced the testimony of Melinda and Hallford's other children. Hallford specifically addressed Melinda's changing story, saying: "If [Melinda] thought [changing her story]was the only way she was going to be released, I imagine anyone on the jury if they were locked up and were expecting to be tried on a murder charge would say anything Mr. Walter Ford would want. You have to be in that predicament to really know."

[8]After instructing the jury on how to balance aggravating and mitigating factors to determine Hallford's sentence, the trial court told the jury that it may consider only two aggravating factors: that the "capital offense was committed while the Defendant was engaged in or attempting to commit a flight after committing, or attempting to commit a robbery" and that "the capital offense was especially heinous, atrocious, or cruel compared to other capital offenses."

14

Hallford had been able to discredit Melinda's testimony by introducing her plea agreement, we do not believe a reasonable probability arises that the result of the trial would have been different. Ample evidence from the trial -- without Melinda's penalty-phase testimony -- allowed the jury to find the two aggravating circumstances and to find that the aggravating circumstances outweighed the mitigating circumstances. Hallford cannot, therefore, show prejudice to excuse his procedural default.

## IV. INEFFECTIVE ASSISTANCE CLAIM

Hallford also contends that his trial counsel was ineffective during the penalty phase by mishandling the incest evidence and by failing to investigate or present certain mitigation evidence. "To succeed on a claim of ineffective assistance, [Hallford] must show both incompetence and prejudice." Chandler v. United States, 218 F.3d 1305, 1312 (11th Cir. 2000) (en banc). To make this showing, Hallford must demonstrate that his trial counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 1312-13 (quoting Darden v.

15

Wainwright, 106 S.Ct. 2464, 2473 (1986) (quoting Strickland v. Washington, 104 S.Ct. 2052, 2065, 2068 (1984)) (internal marks omitted).

We review trial counsel's performance for "reasonableness under prevailing professional norms." Chandler, 218 F.3d at 1313 (quoting Strickland, 104 S.Ct. at 2065). And our scrutiny of counsel's performance "must be highly deferential." Strickland, 104. S.Ct. at 2065. See also Chandler, 218 F.3d at 1314 ("Given the strong presumption in favor of competence, the petitioner's burden of persuasion -- though the presumption is not insurmountable -- is a heavy one." (citing Kimmelman v. Morrison, 106 S.Ct. 2574, 2586 (1986))). "No absolute rules dictate what is reasonable performance for lawyers." Id. at 1317. See also Strickland, 104 S.Ct. at 2065 ("There are countless ways to provide effective assistance in any given case."). We review those acts or omissions by counsel that Hallford alleges are unreasonable "and ask whether some reasonable lawyer could have conducted the trial in that manner." Chandler, 218 F.3d at 1316 n.16. Upon review, we conclude that the acts of Hallford's trial counsel -- although unsuccessful -- were not unreasonable. See id. at 1314. ("Nor does the fact that a particular defense ultimately proved to be unsuccessful demonstrate ineffectiveness.").

16

## A.  Incest Evidence

Hallford contends his trial counsel was ineffective by opening the door for presentation of the incest evidence and by failing to request a limiting instruction.[9] In his testimony during the guilt phase, Hallford suggested that his efforts to discipline his children strictly -- the same children who provided the most incriminating testimony against Hallford -- provided them with motive to testify against him.  The State answered Hallford's "good father" testimony during the penalty phase with evidence that Hallford sexually abused Melinda and had an incestuous relationship with her in the months leading up to Shannon's murder.[10]

Hallford's trial counsel testified at the state post-conviction evidentiary hearing that he intended to show through his client's testimony that "perhaps the children had some sort of reason for their testimony and turning on him" and that this testimony might generate sympathy for Hallford.  The issue of guilt was hotly

---

[9]For discussion's sake, we accept Hallford's contention that the incest evidence was otherwise inadmissible at trial without Hallford's testimony opening the door to its presentation.  We do not actually decide whether or not the incest testimony may have been properly admitted at trial had Hallford not so testified.

[10]The Alabama Court of Criminal Appeals deemed the incest evidence "admissible for the purpose of negating [Hallford's] testimony, which obviously had been offered in an effort to portray himself as a good father and, therefore, a person of good character."  Hallford, 548 So. 2d 526, 544 (Ala. Crim. App. 1988).

17

contested in this case. The children's testimony hurt Hallford's chances for acquittal. In combating the children's testimony -- particularly the detailed eyewitness accounts from Melinda and Sammy -- an objectively reasonable counsel could reasonably seek to discredit them as Hallford's counsel did at the guilt phase. That this testimony at the guilt phase prompted later presentation at the penalty phase of the incest evidence -- after Hallford was adjudged guilty -- was a byproduct of an otherwise reasonable act by a defense counsel trying to avoid a conviction. And if Hallford had been found not guilty, no penalty phase would have occurred.

We agree with the district court that "[f]acts seldom occur in isolation of other facts." We have written that "for a petitioner to show that [his counsel's] conduct was unreasonable, a petitioner must establish that no competent counsel would have taken the action that his counsel did take." Marquard v. Sec'y for Dept. of Corr., 429 F.3d 1278, 1304 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1315). Presenting evidence at the guilt phase that key witnesses may have had ulterior motives to testify against Hallford was not unreasonable in a case in which guilt was contested.

Hallford also contends his counsel was ineffective for failing to request a limiting instruction that the jury should not consider the incest evidence in

18

determining the existence of the aggravating factors.  Hallford asserts that, without

a limiting instruction, the jury may have concluded that the incest evidence could

be considered as evidence for finding the especially heinous, atrocious, or cruel

aggravating circumstance.  We disagree.

In describing the heinous, atrocious, or cruel aggravating circumstance, the

trial court told the jury that the acts it might consider were those attendant to the

capital offense itself and those which were "unnecessarily torturous to the

victim."[11] (Emphasis added.)  And the trial court instructed the jury that they could

consider only the two aggravating circumstances charged.  "Jurors are presumed to

follow the law as they are instructed."  Raulerson v. Wainwright, 753 F.2d 869,

876 (11th Cir. 1985).  We think the instructions plainly and correctly conveyed to

the jury that in meting their recommended sentence they could consider only those

heinous, atrocious, or cruel acts that befell the murder victim, Shannon.  Failure to

request a limiting instruction, under the circumstances, was not ineffective.

By the way, even if counsel acted unreasonably in handling the incest

evidence, we cannot say -- in the light of the overwhelming evidence of Hallford's

---

[11]We find no evidence in the record that would lead a reasonable trier of fact to conclude that there was more than one victim -- Charles Eddie Shannon -- in this case.  The indictment charges a single-victim crime -- the murder and robbery of Shannon.  And the court's charge after the guilt phase of the trial -- to which the court later referred the jury in its penalty-phase charge -- uses the term "victim" interchangeably with "Charles Eddie Shannon."  We are confident that the jury, at the penalty phase, understood that "victim" referred exclusively to Shannon.

19

guilt and the nature of the killing -- that the result of the trial would have been different.

B. Mitigation Evidence

Hallford's penalty-phase presentation consisted only of his mother's testimony. Hallford contends his trial counsel was ineffective because counsel failed to conduct a background investigation and to present evidence of other mitigating circumstances. Hallford's counsel explained that he did not present psychological or personal background testimony because he "just didn't have the benefit of a client that had a good background." In preparing his penalty phase presentation, Hallford's counsel interviewed only Hallford and his mother. We must determine whether counsel acted reasonably in not investigating or presenting more evidence, while according counsel's decision the high degree of deference it is due. Marquard, 429 F.3d at 1304.

We have written that "no absolute duty exists to investigate particular facts or a certain line of defense." Chandler, 218 F.3d at 1317. A reasonable defense does not require full investigation of all alternatives. "Sometimes, a lawyer can make a reasonable decision that no matter what an investigation might produce, he

wants to steer clear of a certain course." <u>Rogers v. Zant</u>, 13 F.3d 384, 387 (11th Cir. 1994). Here, Hallford's trial counsel decided that a "personal and emotional persuasive argument" in which he would attempt to "reach into and touch that spot of compassion that one human being would feel for another human being" was the most effective means of arguing for a merciful sentence. Under the circumstances as they existed at trial, we believe an objectively reasonable lawyer could try the case that way.

During the state and federal post-conviction proceedings, collateral counsel demonstrated that had trial counsel conducted an investigation he may have discovered some evidence that (1) Hallford's father suffered from paranoid schizophrenia; (2) Hallford had a turbulent childhood, dominated by his father's abusive behavior and alcohol abuse; (3) Hallford was sexually abused as a child; and (4) Hallford often found his father having sex with Hallford's cousins. A psychologist also testified during the federal post-conviction proceeding that Hallford exhibited "paranoid characteristics" and had emotional, sexual, and anger issues rooted in his childhood experiences.

"[E]ven when trial counsel's investigation is less complete than collateral counsel's, trial counsel has not performed deficiently when a reasonable lawyer could have decided, in the circumstances, not to investigate." <u>Housel v. Head</u>, 238

F.3d 1289, 1295 (11th Cir. 2001). If Hallford's counsel had introduced some of the mitigating evidence presented in the post-conviction proceedings, the State could have countered with evidence that Hallford sexually abused each of his children and even raped one of his children. The State could also have introduced damaging testimony from a mental health expert -- who testified during the federal post-conviction proceeding -- that Hallford was "self-centered" and did not care about the consequences of his acts.

It is reasonable -- and not ineffective -- for trial counsel to eliminate certain lines of presentation if he has "[m]isgivings about hurtful cross-examination and rebuttal witnesses." Chandler, 218 F.3d at 1321. "[T]he range of what might be a reasonable approach at trial must be broad." Id. at 1313. Hallford's trial counsel had represented Hallford in prior legal proceedings. Counsel's statement that Hallford did not have a good background -- knowledge counsel could have started accumulating as Hallford's lawyer before the present case -- indicates his concern about injecting other aspects of Hallford's life into the trial. See Dobbs v. Turpin, 142 F.3d 1383, 1388 (11th Cir. 1998) (noting that failure to investigate may be reasonable when defendant has given counsel reason to believe it would be fruitless). It was also reasonable not to present evidence from Hallford's

22

childhood because Hallford was 39 years old when he murdered Shannon.[12]  See

Bolender v. Singletary, 16 F.3d 1547, 1561 (11th Cir. 1994) (recognizing that

evidence of childhood abuse may be of minimal value when defendant is adult).

But see Jackson v. Herring, 42 F.3d 1350, 1364-65 (11th Cir. 1995) (concluding

that, under certain circumstances, failure to present mitigating evidence derived

from defendant's childhood may be unreasonable even when defendant was 33

years old).  Under the circumstances, we conclude that not presenting more

mitigation evidence was not unreasonable.[13]


## V.  HEINOUS, ATROCIOUS, OR CRUEL AGGRAVATING CIRCUMSTANCE


Hallford contends the evidence at trial was insufficient to establish the

especially heinous, atrocious, or cruel aggravating circumstance.  The relevant

question in reviewing the sufficiency of the evidence supporting a criminal

conviction is "whether, after viewing the evidence in the light most favorable to

---

[12]Explaining his decision not to present evidence from Hallford's childhood, trial counsel stated: "But [Hallford] was an adult and he had been in prison before and I just didn't feel that I would be effective in front of a jury talking about how unfortunate things were when he was a child."  An objectively reasonable lawyer could so conclude.

[13]Hallford also contends his trial counsel was ineffective for failing to object to information considered in the pre-sentence report and for failing to challenge Hallford's sentence as being arbitrary, capricious, and disproportionate.  After review, we find no merit in these claims.

the prosecution, <u>any</u> rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 99 S.Ct 2781, 2789 (1979). Alabama courts have limited "especially heinous, atrocious, or cruel" crimes to those "conscienceless or pitiless homicides which are unnecessarily torturous to the victim." <u>Ex parte Kyzer</u>, 399 So. 2d 330, 334 (Ala. 1981). In this case:

> The trial court found that [Hallford], after luring the 16-year old boy to the isolated area near the river, shot him in the mouth, rendering him defenseless. The trial court further found that [Hallford] then dragged and marched the helpless and pleading victim to the river, where he shot him in the head twice more and shoved him in the river after taking his wallet.

<u>Hallford</u>, 548 So. 2d at 538.

These facts were supported at trial chiefly by testimony from Sammy and Melinda. Sammy and Melinda further testified that five minutes elapsed between the first shot to Shannon's face and the final two shots to Shannon's head. During this time Hallford dragged Shannon by his feet and pulled him by his hair toward the river. The state trial court, therefore, did not clearly err in finding Shannon's murder to be especially heinous, atrocious, or cruel.

## VI. CONCLUSION

For the foregoing reasons, the district court properly denied Hallford's 28 U.S.C. § 2254 petition.

AFFIRMED.