[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 13-10254
_____

D.C. Docket No. 9:12-cv-80218-KAM


GUS FENNELL,

Petitioner-Appellant,

versus


SECRETARY, FLORIDA DEPARTMENT OF CORRECTIONS,

Respondent-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(September 22, 2014)

Before HULL, MARCUS, and BLACK, Circuit Judges.

PER CURIAM:

Gus Fennell, a Florida prisoner convicted of first-degree murder, appeals the district court's denial of his 28 U.S.C. § 2254 habeas corpus petition.  Fennell's § 2254 petition claimed that his trial counsel in state court provided ineffective assistance by failing to strike juror Kallim Abdool.  The Florida post-conviction court ruled that Fennell had not shown that juror Abdool was actually biased, and, thus, his trial counsel was not ineffective under Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984).

> This Court granted a certificate of appealability as to:
>
> [w]hether the state court's determination that Mr. Fennell's trial counsel was not ineffective for failing to strike juror Kallim Abdool for cause was contrary to, or involved an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding?

After review, we affirm.

## I.  BACKGROUND FACTS

### A.    Jury Selection in State Trial Court

In 2003, in Florida state court, Fennell was charged with the first-degree murder of his girlfriend, Ernestine Monds, and with unlawful possession of a firearm.  The state trial court granted Fennell's request to sever the two counts and try the murder count first.  After a trial, the jury found Fennell guilty of firstdegree

2

murder, and the state trial court imposed a life sentence. Later, Fennell pled guilty to the firearm count, and the state trial court imposed a 44.85-month sentence, to run concurrent with his life sentence.

Because this appeal concerns only defense counsel's actions during jury selection, we review voir dire.

At the beginning of voir dire, the state trial court explained to the potential jurors some basic trial principles, such as the government's burden of proof, the jury's fact-finding role, and the defendant's right not to testify or present evidence, and asked whether anyone needed to be excused. The state trial court, with the parties' agreement, excused several panel members for cause for various reasons, such as the inability to understand English, work conflicts, and health concerns.

The attorneys asked the remaining panel members follow-up questions. Among other things, the prosecutor asked if anyone, given the nature of the charge, felt that he or she could not judge the facts fairly. Several potential jurors, but not Abdool, expressed concerns. The prosecutor asked the panel members if there was anything else that might prevent them from being an impartial juror, and no one raised a hand.

Then Fennell's trial counsel, Mallorye Cunningham, told the panel she was looking for an impartial jury. Cunningham asked each member to state his or her first thought upon hearing that the case involved a murder charge. Cunningham

pointed out that there was a death in the case and asked the panel members whether sympathy for the victim might affect their decision-making.

During questioning, several panel members stated that they might not be able to be impartial because of their sympathy for the victim or because of the serious nature of the charged offense. One panel member, Ms. Solomon, stated that she got very emotional and did not think she could be impartial because she had sympathy for everyone and everything, including bugs, and could not kill a fly. Cunningham asked anyone else who shared Solomon's opinion to raise his or her hand. Another panel member asked, "In which aspect?" Cunningham asked whether anyone else felt like this was not the case for him or her because of the nature of the charges. One panel member, Mr. Reeder, raised his hand. Again, Abdool did not raise his hand.

During a sidebar conference, the state trial court agreed to strike several more panel members for cause, including Solomon, because they had indicated they could not be impartial. At the prosecutor's request, and before resuming voir dire, the state trial court advised the panel that a jury's "verdict should not be influenced by feelings of prejudice, bias or sympathy" but rather must be based on the jury's view of the evidence and on the law. The state trial court explained that while it was normal to have feelings of sadness or sympathy in a murder case, "we ask you not to base your decision based on those feelings," and "you may not be

4

able to do that for one reason or another, and if you can't do that, then you should let us know."

Defense counsel Cunningham resumed questioning each panel member about his or her initial reaction to the murder charge and whether sympathy would play a role in his or her deliberations. When Cunningham came to Abdool, the following exchange occurred:

> MS. CUNNINGHAM:    What was your opinion when you initially heard the charges?
> MR. ABDOOL:    Well, the first thing I thought about, what was — that crime, that was my first reaction, whatever caused him —
> MS. CUNNINGHAM:    Okay. Do you believe that sympathy would play a factor for you in this case?
> MR. ABDOOL:    As a parent.
> MS. CUNNINGHAM:    As what parent?
> MR. ABDOOL:    As a parent.
> MS. CUNNINGHAM:    Not as a parent but as a juror, would you have sympathy, would you be able to set aside sympathy and not have that as a factor in your deliberations in this case?
> MR. ABDOOL:    No.
> MS. CUNNINGHAM:    Is that a no?
> MR. ABDOOL:    Yes.

Following voir dire, Cunningham moved to strike ten potential jurors for cause, some for being unable to set aside sympathy for the victim, including Reeder. The state trial court agreed to strike eight of those panel members, including Reeder, and struck thirty more panel members as a result of preemptory strikes from both Cunningham and the prosecutor. Cunningham did not move to strike Abdool.

5

At the conclusion of the evidence and prior to jury deliberations, the state trial court again instructed the jury that its verdict could not be based on sympathy for any party to the case.  The written instructions, which were given to the jury, also included this instruction.

## B.    Post-Conviction Motion in State Court

After his conviction and direct appeal, Fennell filed a post-conviction motion, pursuant to Florida Rule of Criminal Procedure 3.850, raising an ineffective assistance claim based on trial counsel's failure to strike Abdool for cause.

After an evidentiary hearing, the state 3.850 court denied relief.  After stating Strickland's test for ineffective assistance, the state 3.850 court determined that the proper inquiry was whether trial counsel's failure to object to, or move to strike, a particular juror resulted in a biased juror serving on the jury.  Based on the testimony, transcripts, and exhibits, the state 3.850 court found that: (1) Fennell had not shown by competent and substantial evidence that Abdool had actual bias against him; and (2) "trial counsel's performance, viewed from her perspective at the time of trial, considering all the facts and circumstances, was reasonable under prevailing professional norms."  The state appellate court affirmed.  See Fennell v. State, 77 So. 3d 190 (Fla. Dist. Ct. App. 2011) (unpublished table decision).

## II.  STANDARD OF REVIEW

6

We review <u>de novo</u> a district court's denial of a § 2254 habeas petition. <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>, 719 F.3d 1292, 1299 (11th Cir. 2013), <u>cert. denied</u>, 134 S. Ct. 1541 (2014).  A federal court may not grant habeas relief on a claim the state court denied on the merits unless the state court decision:  (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Section 2254(d) "imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt."  <u>Hardy v. Cross</u>, 565 U.S. ___, 132 S. Ct. 490, 491 (2011) (per curiam) (quotation marks omitted).  This standard is "doubly deferential" when a claim of ineffective assistance of counsel is evaluated under § 2254(d)(1).  <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420 (2009).  "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."  <u>Id.</u> (quotation marks omitted).

## III.  DISCUSSION

A.    **<u>Strickland</u>'s Two-Prong Standard**

7

To succeed on an ineffective assistance claim under Strickland, a petitioner must show that his Sixth Amendment right to counsel was violated because (1) his attorney's performance was deficient, and (2) the deficient performance prejudiced his defense.  Strickland, 466 U.S. at 687, 104 S. Ct. at 2064.  We need not "address both components of the inquiry if the defendant makes an insufficient showing on one."  Id. at 697, 104 S. Ct. at 2069.

Under Strickland, trial counsel's performance is deficient only if it falls below an objective standard of reasonableness.  Id. at 687-88, 104 S. Ct. at 2064. Stated differently, counsel's error at trial "must be so egregious that no reasonably competent attorney would have acted similarly."  Harvey v. Warden, 629 F.3d 1228, 1239 (11th Cir. 2011).  "We evaluate juror selection claims as we would any other Strickland claim," and our evaluation "start[s] with the strong presumption that trial counsel's performance was constitutionally adequate."  Id. at 1238, 1243. Moreover, "[a]n ambiguous or silent record is not sufficient to disprove the strong and continuing presumption of counsel's competency."  Williams v. Allen, 598 F.3d 778, 794 (11th Cir. 2010) (quotation mark omitted).   Under Strickland's second prong, prejudice exists if there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Strickland, 466 U.S. at 694, 104 S. Ct. at 2068.

**B.    Jury Selection Principles**

Before discussing defense counsel Cunningham's performance, we review jury selection principles under federal and Florida law.

A criminal defendant has a right to an impartial jury, and a prospective juror who lacks impartiality must be excused for cause. See Ross v. Oklahoma, 487 U.S. 81, 85-86, 108 S. Ct. 2273, 2277 (1988). To exclude a prospective juror for cause, a party "must demonstrate that the juror in question exhibited actual bias by showing either an express admission of bias or facts demonstrating such a close connection to the present case that bias must be presumed." United States v. Chandler, 996 F.2d 1073, 1102 (11th Cir. 1993) (emphasis added); see also Smith v. Phillips, 455 U.S. 209, 215, 102 S. Ct. 940, 945 (1982). The burden is on the challenger to show the prospective juror has actual bias, so as to raise the presumption of partiality. Irvin v. Dowd, 366 U.S. 717, 723, 81 S. Ct. 1639, 1643 (1961). Moreover, the U.S. Supreme Court has upheld a trial court's seating of a juror even where the juror gave conflicting or ambiguous answers during voir dire about his ability to be impartial. See, e.g., Patton v. Yount, 467 U.S. 1025, 1038-40, 104 S. Ct. 2885, 2892-93 (1984); Murphy v. Florida, 421 U.S. 794, 801-03, 95 S. Ct. 2031, 2037-38 (1975).

Under Florida law, the test at trial "for determining juror competency is whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the

9

court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984).  The trial court must grant a party's motion to strike a prospective juror for cause if there is "any reasonable doubt" as to the juror's impartiality.  Singer v. State, 109 So. 2d 7, 23 (Fla. 1959).

In the post-conviction context, however, Florida has an actual bias requirement.  See Carratelli v. State, 961 So. 2d 312, 323 (Fla. 2007).  "[W]here a postconviction motion alleges that trial counsel was ineffective for failing to raise or preserve a cause challenge, the defendant must demonstrate that a juror was actually biased."  Id. at 324 (emphasis added).  To meet the actual bias standard, "the defendant must demonstrate that the juror in question was not impartial-i.e., that the juror was biased against the defendant, and the evidence of bias must be plain on the face of the record."  Id.

## C.    Fennell's Ineffective Assistance Claim

Considering the record as a whole, we cannot say that the state 3.850 court's determination that Fennell's trial counsel was not ineffective was contrary to, or an unreasonable application of, Strickland or that the state 3.850 court's decision was based on an unreasonable determination of the facts in light of the evidence presented during the evidentiary hearing.

Defense counsel Cunningham testified that juror sympathy for the victim was a critical issue to her trial strategy because it was important to the success of

10

Fennell's self-defense argument. To that end, Cunningham and her co-counsel planned to strike for cause potential jurors who would allow their sympathy for the victim to affect their deliberations. And, indeed, a substantial portion of voir dire was devoted to questioning each prospective juror about the effect sympathy might have on his or her impartiality.

The problem for Fennell here is that Cunningham's exchange with Abdool during voir dire about sympathy was ambiguous and did not show actual bias. To be sure, Abdool indicated he had sympathy as a parent. Cunningham then asked a follow-up, compound question, which asked first whether he would have sympathy, "[n]ot as a parent, but as a juror," and Abdool responded, "No." We recognize the second part of the question asked whether Abdool would "be able to set aside sympathy" and the "No" applied to that, too. The problem is the "No" to the first part of the question makes the second part unnecessary. In any event, the question and answer are ambiguous, and, thus, this is not a case in which the prospective juror made a clear declaration that he could not be impartial.

Moreover, at the evidentiary hearing, both Cunningham and the prosecutor testified that they believed Abdool's "No" response indicated he did not have sympathy as a juror and was capable of being impartial. Cunningham further testified that she did not believe she had a basis to strike Abdool for cause.

11

Notably, Cunningham's and the prosecutor's interpretation of Abdool's answer is supported by the other evidence in the record.  Neither Cunningham nor the prosecutor, each with over twenty years of trial experience, noted any "sympathy" issues with Abdool on their jury selection charts, although they did make such notes for other prospective jurors.  Indeed, in their testimony at the post-conviction evidentiary hearing, both Cunningham and the prosecutor testified that they had indicated no concerns on their jury selection charts about potential sympathy during voir dire of Abdool. Further, Cunningham previously had asked the entire panel whether anyone felt he or she could not be an impartial juror because of feelings of sympathy, and only one panel member, Reeder, responded. Cunningham testified that, based on Abdool's failure to respond to this question to the entire panel, she did not believe Abdool had sympathy for the victim.  In addition, the prosecutor asked the venire if they could be fair and impartial and no member replied that they could not. The prosecutor asked:

> As judges of the facts in this case, I wanted to ask you if anyone here would have any, either religious or moral beliefs that you feel would prevent you from being able to be a fair and impartial juror and decide if a person is either guilty or not guilty of committing a crime; does anyone, who has not already said anything to respond to such a question?
> Does anyone have anything that comes up in their mind that you feel would prevent you from sitting as a fair and impartial juror[?]

12

No one in the venire, including Abdool, responded to the question. Finally, the trial judge, who was active throughout voir dire, never expressed any concern about Abdool.

As the U.S. Supreme Court has explained, the question of whether a prospective juror is biased is "largely one of demeanor," and a prospective juror's demeanor during voir dire may make clear what seems ambiguous on the face of a cold transcript:

> Demeanor plays a fundamental role not only in determining juror credibility, but also in simply understanding what a potential juror is saying. Any complicated voir dire calls upon lay persons to think and express themselves in unfamiliar terms, as a reading of any transcript of such a proceeding will reveal. Demeanor, inflection, the flow of the questions and answers can make confused and conflicting utterances comprehensible.

Patton, 467 U.S. at 1038 & n.14, 104 S. Ct. at 2892 & n.14. Here, none of the people in the best position to evaluate Abdool's response appear to have understood him to mean that he could not be impartial.

In contrast, Fennell did not present any evidence, other than the voir dire transcript, to show that Abdool was actually biased against him. Instead, Fennell points to the state 3.850 court's order granting him an evidentiary hearing and claims that the state 3.850 court found in that order that Abdool was biased and should have been removed from the panel. The language Fennell points to, however, was part of the state 3.850 court's threshold analysis to determine

whether the Fennell's factual allegations were "conclusively rebutted by the record" or did not "demonstrate a deficiency on the part of counsel which [was] detrimental to" Fennell and thus showed that Fennell was not entitled to relief. LeCroy v. Dugger, 727 So. 2d 236, 239 (Fla. 1998) (quoting Kennedy v. State, 547 So. 2d 912, 913 (Fla. 1989) (explaining the standard Florida courts use to determine whether to grant a post-conviction petitioner an evidentiary hearing on an ineffective assistance claim). Furthermore, Fennell made this argument at the outset of the 3.850 hearing, and the state 3.850 court made it clear that it had not yet made any factual findings on the merits of Fennell's claims. Thus, the state 3.850 court's order granting Fennell an evidentiary hearing did not establish that Abdool was actually biased.

Given that a prospective juror's ambiguous statements about his ability to be impartial do not give rise to a presumption of actual bias, the state 3.850 court's determination that Fennell failed to show actual bias was reasonable. Furthermore, Abdool's ambiguous response, alone, cannot rebut the presumption that his defense counsel acted competently. See Williams, 598 F.3d at 794. Under the totality of the circumstances, a reasonable attorney in Cunningham's shoes could have concluded that there was no need to move to strike Abdool for cause.

Furthermore, for the same reason that Cunningham's failure to object to Abdool was not deficient performance, Fennell cannot show that Abdool's

14

presence on the jury prejudiced him.  Fennell did not show that Abdool was actually biased against him.  Both during voir dire and immediately prior to deliberations  the state trial court instructed the jury that its verdict should be based on the evidence and not on feelings of sympathy.  In addition, Abdool, along with the other empaneled jurors, took an oath to be fair and impartial.  Jurors are presumed to follow the law as instructed by the trial court and to comply with their oaths.  Hallford v. Culliver, 459 F.3d 1193, 1204 (11th Cir. 2006); United States v. Khoury, 901 F.2d 948, 955 (11th Cir.), modified on other grounds, 910 F.2d 713 (11th Cir. 1990).  Without any evidence that Abdool was actually biased, we must presume that he followed the trial judge's instructions, set aside his feelings of sympathy, and was fair and impartial during deliberations.

In sum, Fennell has not shown that the state 3.850 court's decision rejecting his ineffective assistance claim was contrary to, or an unreasonable application of, Strickland or other clearly established federal law or that the decision was based on an unreasonable determination of the facts.  Accordingly, we affirm the district court's denial of Fennell's § 2254 petition.

**AFFIRMED.**